**Joyce BERRY, Plaintiff-Appellant,**

v.

**UNITED OF OMAHA,
Defendant-Appellee.**

No. 83–7245.

**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 17, 1983.

Lorant, Harris & Yearout, Michael J. Evans, Birmingham, Ala., for plaintiff-appellant.

Bradley, Arant, Rose & White, Braxton Schell, Jr., Hobart A. McWhorter, Jr., Birmingham, Ala., for defendant-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

Joyce Berry, the plaintiff in the trial court, appeals to this court from the order of the district court granting summary judgment in favor of United of Omaha Insurance Company. The question presented in this appeal is whether an Alabama plaintiff can maintain an action against an insurance company for bad faith refusal to pay a claim when the insurance company first refuses to pay the claim but then relents and pays prior to the commencement of the suit. The district judge held that the plaintiff could not bring such an action. We disagree.

Joyce Berry underwent oral surgery in late June, 1981 and submitted a claim for payment of her medical expenses to United of Omaha. On December 2, 1981, United wrote stating that the information it had received indicated that her injury was not the result of an accident and that "no benefits are payable." The letter notified the plaintiff of her right to request a review by United's home office. The plaintiff's son apparently informed United of the plaintiff's plan to sue, and the insurance company paid the claim in early 1982. Subsequently, Berry filed suit against United claiming bad faith refusal to pay her insurance claim. The district court, Clemon, J., on March 23, 1983, filed a memorandum opinion granting the defendant's motion for summary judgment. The court held that "the tort of bad faith refusal to pay an insurance claim requires an initial showing of nonpayment. The parties in this action do not dispute that there was an insurance contract and that plaintiff's claim was *paid* under that insurance contract. There is no question of fact in that regard. Plaintiff, therefore, cannot recover on her bad faith claim as a matter of law." Mem. op. at 5.

The tort of bad faith nonpayment of an insurance claim was recognized by the Alabama Supreme Court in 1981. *See Chavers v. National Security Fire & Casualty Co.,* 405 So.2d 1 (Ala.1981). That decision gave insurance policy holders (but not third party beneficiaries) an action in tort, in addition to their contract action, against an insurance company that refused payment of a claim when there is either "(1) no lawful basis for the refusal coupled with actual

knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal." *Id.* at 7. Plaintiffs are entitled to recover damages for mental distress as well as for economic loss. *Id.* Subsequently, the court set out five elements of a bad faith claim:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*National Security Fire & Casualty Co. v. Bowen,* 417 So.2d 179, 183 (Ala.1982). Although several later Alabama Supreme Court decisions have fleshed out the other elements of the tort, the second element, "an intentional *refusal* to pay the insured's claim" has not been discussed. *See id.* (emphasis supplied).

■ The district court's conclusion that "the tort of bad faith requires an initial showing of nonpayment" is erroneous. The Alabama Supreme Court has consistently listed as an element of the tort *refusal* to pay an insurance claim. The difference is that, where nonpayment is a condition that the defendant can change at any time by tendering payment, *refusal* to pay is a tortious act that cannot be erased by subsequent payment. Aside from the explicit statements of the Alabama Supreme Court naming *refusal* rather than nonpayment as the element of the tort of bad faith (the language from *Bowen* quoted above is repeated consistently), several other aspects of the tort suggest that the affirmative act, not the condition of nonpayment, should be the focus of courts' inquiries. First, in one

recent case the Alabama Supreme Court held that "[t]he cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal." *Safeco Insurance Co. of America v. Sims,* 435 So.2d 1219, 1222, 17 A.B.R. 2298, 2304 (Ala.1983). If the action accrues at the point when payment is *refused,* the elements of the tort are satisfied on such *refusal,* and the continuing condition of nonpayment cannot be predicate to a bad faith cause of action. Second, the fact that the plaintiff may recover damages for mental distress suggests that *refusal* to pay is the gravamen of the tort; mental distress is more likely to result from the initial refusal to settle than from the circumstances that the defendant has not paid at the time the lawsuit is filed.

■ If nonpayment of the claim is not an element of the tort of bad faith refusal to settle, it may be that a showing of payment is a defense. Such a conclusion would be contrary to traditional tort principles because restitution is not usually a defense to a tort action. The plaintiff makes an appropriate analogy to the tort of conversion. One of the elements of conversion is a wrongful taking of the plaintiff's property—analogous to a bad faith refusal to settle. The Alabama Supreme Court has made clear that "prior return of the property to the plaintiff does not bar a suit for conversion." *Roebuck Auto Sales, Inc. v. Wallace,* 301 So.2d 546, 549 (Ala.1974). "Return of the chattel ... does not bar the action, but goes merely to reduce the damages." W. Prosser, The Law of Torts, § 15 at 97 (4th ed. 1971). This rule is even more warranted in the cases of bad faith refusal to settle insurance claims because subsequent payment cannot compensate the plaintiff for all the damages she is entitled to claim (e.g. mental distress).

Thus, the judgment of the district court is reversed and the case remanded for further proceedings.

REVERSED and REMANDED.