Candelaria V. DARLOW and Daniel L. Darlow, Appellants (Plaintiffs),

v.

FARMERS INSURANCE EXCHANGE, a California corporation, Appellee (Defendant).

No. 91–76.

Supreme Court of Wyoming.

Dec. 9, 1991.

C.M. Aron of Aron and Henning, Laramie, for appellants.

George E. Powers, Jr. and Rachel Recker Rouse of Godfrey & Sundahl, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

The issue to be decided by this appeal is whether the conduct of an insurer with its insured constituted bad faith under the rule this court announced in *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo. 1990). The policyholders, appellants Candelaria V. Darlow and Daniel L. Darlow, appeal from a summary judgment entered in favor of appellee, Farmers Insurance Exchange. Appellants claim appellee acted in bad faith by unreasonably delaying or denying auto insurance policy medical payment benefits owed following a two-car collision where both vehicles were insured by the same insurance carrier.

We affirm.

## I.

### ISSUES

Appellants present three issues for review:

[1.] Whether the insurer's delay in payment of first-party medical-payment benefits was unreasonable.

[2.] Whether the trial court erred in holding that insurer bad faith in a first-party case is cured by later payment of the claim.

[3.] In a double-insured auto accident case—that is, the same company insures both drivers—whether an insurer acts in bad faith when it negotiates the insured's third-party claim without informing her of the rights to which she is entitled under her own policy, and without clearly disclosing that the insurer is acting not on behalf of the insured but instead on behalf of the other driver.

Appellee's formulation of the relevant issues on appeal differs:

[1.] In an action for bad faith under *McCullough v. Golden Rule Insurance Company*, can an insurance company be liable where it has paid its insured's claim promptly and in full?

[2.] Is a claimant seeking recovery under a liability policy entitled to special treatment simply because she is also insured by the same company under a separate policy of insurance?

## II.

### FACTS

The innocuous beginning of this litigation occurred on October 1, 1988. Misty

Jackson, a juvenile, drove a 1979 Mustang out of a parking lot in Laramie, Wyoming and struck broadside Candelaria Darlow's 1977 Buick. Jackson accepted liability for the accident. Mrs. Darlow's whiplash injuries required emergency room treatment and subsequent physical therapy.[1]

Candelaria Darlow and her husband Daniel Darlow (Darlows) purchased their automobile insurance policy from Farmers Insurance Exchange (Farmers) in Ogden, Utah. The Darlows had moved to Wyoming only two months before the accident so Mr. Darlow could begin law school. Their Wyoming E–Z–Reader Car Policy, in effect at the time of the accident, was actually issued October 28, 1988, but effective on September 23, 1988. The policy was signed by the Laramie agent of Farmers, T.F. Thone. This policy included first-party medical claims coverage. "We will pay reasonable costs for necessary *medical services* furnished within two years from the date of the *accident,* because of *bodily injury* sustained by an *insured person.*" (Emphasis in original.)

The Mustang driven by Jackson was also insured by Farmers. The policyholders were Ms. Jackson's parents, Marvin and Kathryn Browning of Laramie. Thone had sold the Brownings their policy. This policy provided liability coverage for third-party property damage and bodily injury claims.

Mr. Darlow reported the accident to Thone on Monday, October 3, 1988, after obtaining his name from Jackson's mother. Mr. Darlow completed a form titled "Statement of Facts of Accidents" at Thone's office. This insurance form identified the parties to the accident and indicated that both parties were insured by "FIG" or Farmers Insurance Group. The form reported damage to the Darlows' Buick and the injury to Mrs. Darlow. Farmers processed this form as a third-party liability claim by the Darlows against the Browning policy.

During the meeting, Mr. Darlow did not ask Thone any questions about coverage under the Darlows' policy and no requests for payment of medical bills were made. Thone said that Jackson had admitted liability and that Charles Robert Inman, a Farmers claims representative from Cheyenne, Wyoming, would be the adjuster for their claim. Thone clearly indicated that he was the agent for both parties in this accident, since both were covered by the same company, and his job would be to forward the paperwork. Mr. Darlow informed Thone that his policy was "full coverage" including comprehensive, collision, medical and liability coverage.

Farmers opened a property damage claim file on October 4 and a bodily injury claim file on October 5, 1988. Inman, the claims representative, contacted the Darlows on October 5 by telephone and scheduled an appointment to meet with the Darlows at their home on October 12, 1988.

At the October 12 meeting, Inman informed the Darlows that he represented Jackson and the Brownings in reaching a settlement. The Darlows do not recall such a specific statement. However, the Darlows acknowledge that Inman immediately settled the property damage claim on their vehicle by paying $470.

During the meeting, Inman offered, after discussing Mrs. Darlow's condition, to settle the bodily injury claim for a total of $3,000. However, Inman discouraged the Darlows from settling their claim so soon after the accident. Inman informed the Darlows that until they settled, any medical bills would be paid by their insurance policy. Mr. Darlow acknowledged he had medical coverage since he had reviewed the terms of his insurance policy prior to the meeting.

Inman's next meeting with the Darlows occurred on November 4, 1988. Inman offered the Darlows a revised settlement of $3,500 which the Darlows rejected. The Darlows requested a $5,000 to $10,000 settlement.

---

**1.** The medical expenses incurred by Mrs. Darlow apparently totalled $1,540.55, including Ivinson Memorial Hospital emergency room—$279.55, ambulance—$153, radiology—$40, physical therapy—$240, medical doctor—$173 and the balance of $655 for chiropractic treatments.

At the November meeting, the Darlows gave Inman medical bills to be paid from the Darlows' medical payments coverage. After this meeting, Farmers opened a first-party medical claim file under the Darlows' policy. On November 8, 1988, Farmers requested a proof of loss form be completed by Mrs. Darlow. She completed the form on November 17, 1988 and Farmers received it on November 22. The initial payment of $770.55 for medical bills was made by Farmers on December 16, 1988. Subsequent installment payments were made to total the sum for all medical bills submitted by the Darlows.

Mrs. Darlow sought legal assistance on December 2, 1988 which resulted in a negligence lawsuit against Jackson filed on December 21, 1988. Mrs. Darlow accepted, on May 30, 1989, an offer of judgment under W.R.C.P. 68. On June 12, 1989, Mrs. Darlow filed a satisfaction of judgment acknowledging receipt of $15,035 for settlement of her claims against Jackson. As a result, no third-party claims are at issue in the present action.

The Darlows filed this action on November 21, 1989 alleging bad faith, deceit and duress, and intentional infliction of emotional distress in Farmers' handling of the first-party claims. After more than one year of discovery, Farmers filed a motion in the district court for summary judgment on all claims. The Darlows responded with a cross motion for partial summary judgment on the bad faith claim. The district court granted Farmers' motion and denied the Darlows' motion. The Darlows appeal only from the portion of the summary judgment which denied their bad faith claim. Consequently, we now consider the duty of the insurer under its first-party automobile insurance medical payment benefit coverage when that carrier also had the liability coverage on the other driver involved in the two-car accident.

### III.

### DISCUSSION

### A.

This appeal contemplates a grant of summary judgment in favor of Farmers which is only proper if there are no genuine issues of material fact and the insurer as the prevailing party is entitled to judgment as a matter of law. *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255 (Wyo.1988); *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School Dist. No. One*, 763 P.2d 843 (Wyo.1988). Where, as in this case, the facts are not in dispute and the questions presented are strictly ones of law, the appellate court accords no special deference to and is not bound by the district court's decision. *Albany County School Dist. No. 1*, 763 P.2d at 1257–58; *Teton Plumbing and Heating, Inc.*, 763 P.2d at 847.

> "[W]e review the judgment in the same light as the district court, using the same information. A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts."

*Doud v. First Interstate Bank of Gillette*, 769 P.2d 927, 928 (Wyo.1989) (quoting *Garner v. Hickman*, 709 P.2d 407, 410 (Wyo. 1985)).

▮ Wyoming announced the rule that an insurance company owes a duty of good faith to its policyholders not to unreasonably deny a claim for benefits under the policy in *McCullough*, 789 P.2d 855. The breach of the duty of good faith and fair dealing gives rise to an independent tort action for bad faith. *Id.* at 858. The appropriate standard of care to determine bad faith is the objective standard of whether or not the validity of the denied claim was fairly debatable. *Id.* at 860.

> "To show a claim for bad faith, a plaintiff must show the absence of a reason-

able basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one."

*Id.* at 860 (quoting *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376–77 (1978)).

■ The test announced in *McCullough*, as adopted from *Anderson*, contains two essential components. *Reuter v. State Farm Mut. Auto. Ins. Co., Inc.*, 469 N.W.2d 250 (Iowa 1991); *Fehring v. Republic Ins. Co.*, 118 Wis.2d 299, 347 N.W.2d 595 (1984). First, the insured must show the absence of a reasonable basis for the insurer to deny the benefits of the policy. Stated another way, the insured must show that a reasonable insurer under the circumstances would not have acted as they did by denying or delaying payment of the claim. *McCullough*, 789 P.2d at 860; *Anderson*, 271 N.W.2d at 377. Second, knowledge or reckless disregard of the lack of a reasonable basis for denying the claim must be proven. The *Anderson* court recognized that:

> [T]he knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

*Anderson*, 271 N.W.2d at 377.

The Darlows' foundational premise asserts that Farmers' delay in payment of the first-party medical payment benefits was unreasonable. The principal support the Darlows provide for the premise comes from three contentions. First, the Darlows were denied medical payment benefits for ten weeks after reporting the accident to the local Farmers agent. Second, the lack of payment allegedly caused Mrs. Darlow to decline medical treatment. Third, Farmers used the offer of medical payment benefits as a negotiation tool in settlement of the Darlows' third-party claim against the Browning policy.

■ The first contention fails since no medical payments were in fact denied for a period of ten weeks. It is undisputed that the Darlows made no claim for medical payments in their initial report to Farmers on October 3, 1988. At the October 12, 1988 meeting, Mr. Darlow claimed he gave Inman medical bills to "get them taken care of" from the ambulance service, hospital, and X-ray technician. Inman did not recall receiving medical bills during this meeting. The submitted hospital statement contained in the record for $432.55 was dated November 3, 1988.

■ The November 4, 1988 meeting marked the first time the Darlows sought to make a claim for benefits under terms of their first-party medical payments coverage. Inman accepted the medical bills and provided them to the Cheyenne office of Farmers to process. Four days later, November 8, Farmers requested a proof of loss form be completed by Mrs. Darlow. The form carries a stamped notation that "[n]o medical bills can be paid until this form is completed, signed & returned." After Mrs. Darlow completed the form on November 17, 1988, it arrived in Cheyenne on November 22, 1988. Farmers then took twenty-four days after receiving the completed proof of loss form and the associated medical bills to process the claim and make an initial payment on December 16, 1988. This twenty-four day period is just over one-half of the statutory forty-five day period established under Wyoming law. "Claims for benefits under a life, accident or health insurance policy shall be rejected or accepted and paid by the insurer or its agent designated to receive the claims within forty-five (45) days after receipt of the proofs of loss and supporting evidence." W.S. 26–15–124(a) (1991). The statutory period for the first-party insurance benefit payments begins when the insurer receives the proofs of loss and the supporting evidence. *Hart v. Allstate Ins. Co.*, 437 So.2d 823 (La.1983).

■ The contention that Mrs. Darlow declined necessary medical treatment also fails to demonstrate unreasonableness on Farmers' part. Mrs. Darlow sought treat-

ment from Dr. W.F. Hankins, III on October 20, 1988. The doctor's records indicate Mrs. Darlow was examined and had six additional office visits for chiropractic adjustments during the period from October 20, 1988 through November 23, 1988. In deposition testimony, Mrs. Darlow stated she suspended these visits after the doctor demanded payment. Mr. Darlow admitted that at the time his wife elected to suspend treatment, no claim for the $190 medical bill had been submitted to Farmers, although other claims were being processed. In fact, the doctor's statement establishes that when Mrs. Darlow suspended treatment on November 23, no balance was owed since the Darlows had paid for the visits. Farmers cannot reasonably be expected to anticipate the need for payment of a chiropractic treatment billing that has not been presented to them. Farmers did reimburse the Darlows for the money they paid to Dr. Hankins after a claim was made.[2] Mrs. Darlow resumed treatment with the doctor on December 30, 1988.

■ The third argument advanced by the Darlows in support of their unreasonable delay theory is that Farmers used the offer of medical payment benefits as a negotiation tool in settlement of their third-party claim against the Browning policy. This contention is unsupported by the record. During the initial report of the accident, the Darlows never inquired of the rights under their policy and made no requests for payment of medical bills. During the October 12 meeting, Inman discouraged a premature bodily injury claim settlement and advised the Darlows that medical claims would be paid by their insurance policy. After rejecting a second settlement offer at the November 4, 1988 meeting, the Darlows presented Inman with medical bills for payment as a first-party claim under the Darlows' policy. These bills were paid without unreasonable delay. At no time did Farmers withhold medical payments with the intent to coerce a settlement of the third-party liability claims.

The Darlows' argument fails to satisfy even the first portion of the *McCullough* test requiring proof of the absence of a reasonable basis to deny the benefits under the policy. The Darlows receive no support for their position from other authority. Our attention is directed to *Chavez v. Chenoweth,* 89 N.M. 423, 553 P.2d 703 (App. 1976), where the court merely found that allegations of delay in paying first-party medical expenses under an insurance contract were sufficiently pleaded to state a claim for relief. The plaintiff contended that the bad faith dealings had occurred from April until December of 1972, a period of nine months. *Id.,* 553 P.2d at 709. In *Neal v. Farmers Ins. Exchange,* 21 Cal.3d 910, 148 Cal.Rptr. 389, 389–95, 582 P.2d 980, 983–86, (1978), the California Supreme Court determined that a delay of two-years and eight-months for payment of an uninsured motorist claim was sufficient support for a jury finding of a breach of good faith and fair dealing. Delays in claims payments of nine or more months created a breach of good faith and fair dealing in *Kanne v. Connecticut General Life Ins. Co.,* 607 F.Supp. 899 (D.Cal.1985), *aff'd in part, rev'd in part,* 819 F.2d 204, *withdrawn,* 823 F.2d 284 (9th Cir.1987), *reh'g,* 859 F.2d 96, *superseded,* 867 F.2d 489 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). Unreasonable attempts to "starve out" an insured were found in *Chester v. State Farm Ins. Co.,* 117 Idaho 538, 789 P.2d 534 (App. 1990) when the court found claim forms had been repeatedly rejected by the insurer in a prolonged and confused seven-month-long process.

In the present case, Farmers received an initial claim for third-party liability coverage by the Darlows against the Browning policy. Farmers reacted properly by investigating the accident, determining liability and offering property and bodily injury settlements. The Darlows accepted the property settlement, but refused the bodily injury settlement, partly on the well-considered advice of the Farmers' claims representa-

---

**2.** The district court may have viewed with some suspicion any suggestion that the chiropractic treatment provider refused to treat when the insured was well aware and could have advised that first-party medical payment benefit insurance of a sufficient amount was in effect.

tive. Later, the same claims representative instituted the processing of first-party medical claims at the Darlows' request. The fact the Darlows declined two Farmers settlement offers and eventually received a larger sum after instituting proceedings on the third-party claim is immaterial. We hold Farmers did not act unreasonably, in a fashion calculated to achieve delay for delay's sake, in paying the first-party medical claims. *Greene v. Truck Ins. Exchange*, 114 Idaho 63, 753 P.2d 274 (1988). Once submitted, the medical claims were fully and promptly paid.

### B.

■ The Darlows also contend, in essence, that Farmers had a duty to deal in good faith, and, if it did not do so, it is not absolved as a matter of law by eventual payment of the first-party medical claims. Farmers counters that its duty was fulfilled as there was absolutely no denial or delay of benefits under the terms of the Darlow policy. Farmers argues absent denial or unreasonable delay that bad faith cannot exist as a matter of law. The difficulty with both arguments originates with the failure to comprehend that bad faith requires objective review of whether or not the validity of the denied claim was fairly debatable. *McCullough*, 789 P.2d at 860.

The Darlows rely primarily upon the Arizona Supreme Court's decision in *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986) for support. That court determined that the implied covenant of good faith and fair dealing in an insurance contract can be breached, even if a company performs its express covenants under the insurance contract by paying the claim demanded. *Id.*, 726 P.2d at 573. The express covenant was a $10,000 coverage provision in a homeowners policy for the loss by fire of a hay barn valued at $40,000. *Id.* 726 P.2d at 568, 576. Farmers Insurance Company of Arizona (Farmers of Arizona) paid the claim a month after the fire. *Id.*, 726 P.2d at 568. The first-party bad faith arose when the insurer failed to disclose to the insured an investigator's report that determined the fire was started negligently by a

neighbor, who carried a $100,000 liability policy also with Farmers of Arizona. *Id.* The court found that Farmers of Arizona had acted improperly to impede its insured's recovery of the uninsured portion of the loss. *Id.*, 726 P.2d at 569, 579.

What the Darlows conveniently ignored was the *Rawlings* court rationale. First, the court determined that the insurer's conduct was unreasonable by delaying the insured's claim against the tort-feasor. *Id.*, 726 P.2d at 573. The court then determined that the insurer acted intentionally without fairly debatable grounds using deceit, nondisclosure, reneging on promises, violation of industry custom and deliberate attempts to obfuscate. *Id.*, 726 P.2d at 576–77. *Rawlings* clearly followed the two-step test outlined in *McCullough* and *Anderson* for first-party liability. *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 792 P.2d 719 (1990); *accord, White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014 (1986).

A number of courts have found, as the *Rawlings* court determined, that "only a showing of an initial bad faith refusal to pay a claim—not a showing of its ultimate nonpayment—is a required element of a bad faith tort cause of action." 1 J. McCarthy, Recovery of Damages for Bad Faith § 1.11 (5th ed. 1990). *See Robinson v. North Carolina Farm Bureau Ins. Co.*, 86 N.C.App. 44, 356 S.E.2d 392 (1987). The Eleventh Circuit Court of Appeals concluded that refusal to pay a valid insurance claim is a tortious act that cannot be erased by subsequent payment. *Berry v. United of Omaha*, 719 F.2d 1127 (11th Cir.1983). *See also Schlauch v. Hartford Acc. and Indem. Co.*, 146 Cal.App.3d 926, 194 Cal. Rptr. 658 (1983). The affirmative act of nonpayment, rather than the condition of nonpayment, is the focus of the courts' inquiries. *Berry*, 719 F.2d at 1129.

For the Darlows, the case law reveals no hidden treasure. We agree that subsequent payment of a denied or unreasonably delayed claim does not absolve a tort-feasor; however, no claims of the Darlows for medical payments were denied after submission. No claims for medical payments

were unreasonably delayed after submission. No affirmative act of nonpayment sufficient to constitute a tort occurred. Therefore, the payment of the medical claims could not absolve Farmers of tort liability since, as a matter of law, none existed. *Coleman v. Gulf Life Ins. Co.,* 514 So.2d 944 (Ala.1987).

## C.

■ The Darlows argue Farmers acted with knowledge or reckless disregard of the lack of a reasonable basis for denying the claim in one of two alternatives. First, it is claimed that Farmers violated its duty of good faith and fair dealing by intentional failure to inform the insured of available policy benefits, and second, Farmers violated its duty of good faith and fair dealing by intentional misrepresentations concerning the insured's rights under the policy. The Darlows' argument is prefaced upon the nature of the legal duty owed to an insured particularly in a situation in which both parties to an incident are insured by the same company, the so called double-insured situation. Farmers defends its actions by saying that the Darlows never asked for an explanation of coverage or benefits and no misrepresentations occurred.

The duty owed to an insured is often characterized by the nature of the claim. When the benefit derives from the insurer's duty to defend the insured against third-party actions, that relationship is characterized as a third-party claim. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991). A first-party claim results when the insured makes a claim against his insurer for benefits accruing directly from the insurance contract. *Id.* In *Western Casualty and Surety Co. v. Fowler,* 390 P.2d 602 (Wyo.1964), this court previously defined the duty of an insurer to an insured in a third-party claim. The insurer's duty is to "exercise intelligence, good faith, and honest and conscientious fidelity to the common interest" of the insured as well as the insurer and give at least equal consideration to the interest of

the insured, and, if it fails to do so, the insurer acts in bad faith. *Id.* at 606.

The duty of good faith and fair dealing announced in *McCullough* applies to first-party claims. *McCullough,* 789 P.2d at 855. In an issue of first impression in Wyoming, the Darlows argue that inherent in this duty is the requirement that the insurer inform the insured of the extent of the coverage afforded under their policy before negotiating a settlement, especially when it is apparent that the insured did not know the coverage. *MFA Mut. Ins. Co. v. Flint,* 574 S.W.2d 718 (Tenn.1978). In *Flint,* the court specifically found it was apparent to the adjuster that the insured did not know the extent of their coverage. *Id.* The adjuster took advantage of the insured's ignorance to negotiate a settlement that was grossly inadequate. *Id.*

While *Flint* specifically dealt with uninsured motorist provisions of a first-party claim, the Tennessee Supreme Court applied the duty to inform to similar policy provisions involved in a double-insured situation. *Gatlin v. Tennessee Farmers Mut. Ins. Co.,* 741 S.W.2d 324 (Tenn.1987). The court reasoned the duty of good faith and fair dealing includes "informing an insured as to coverage and policy requirements when (1) it is apparent to the insurer that there is a strong likelihood that its insured only can be compensated fully under her own policy and (2) that the insured has no basis to believe that she must rely upon her policy for coverage" (hereinafter "Tennessee Rule"). *Id.* at 326. *Gatlin* involved a two-car accident in which both parties had liability coverage with the same insurer. *Id.* at 325. The driver who was clearly at fault had only minimum coverage. *Id.* at 326. The insurer failed to disclose the restricted coverage of the party at fault and failed to disclose that the injured party would have greater coverage under her own policy. *Id.*

The court in *Dercoli v. Pennsylvania Nat. Mut. Ins. Co.,* 520 Pa. 471, 554 A.2d 906 (1989) gave the most expansive reading to the Tennessee Rule. The duty to deal fairly and in good faith includes the duty of full and complete disclosure as to all of the

benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim, when the insurer's agents undertake to provide assistance and advice and advise against retaining independent legal counsel. *Id.* A more restrictive reading came from the Utah Supreme Court which adopted the philosophy of the Tennessee Rule, in explaining the duty of good faith, without expressly adopting the entire statement. *Beck v. Farmers Ins. Exchange,* 701 P.2d 795 (Utah 1985). One commentator expresses the view that there must be some bounds on the insurer's duty to inform; otherwise, the claims adjustment process would grind to a halt if the insured could avoid the force of any provision of his choosing simply by alleging that the insurer did not explain it to him. S. Ashley, Bad Faith Actions § 5:15 (1984–1990).

California's Supreme Court also recognized the benefit of an obligation to inform an insured of policy provisions. In *Davis v. Blue Cross of Northern California,* 25 Cal.3d 418, 158 Cal.Rptr. 828, 600 P.2d 1060 (1979), the court reasoned that the implied duty of good faith and fair dealing requires the insurer to give at least as much consideration to the insured's interest as it does to its own. *See Egan v. Mutual Of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). The *Davis* court determined the insurer has a duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy. *Davis,* 158 Cal.Rptr. at 833, 600 P.2d at 1065. The court found a particular need for information existed when the insured's lack of knowledge may potentially result in a loss of benefits or a forfeiture of rights. *Id.,* 158 Cal.Rptr. at 833–34, 600 P.2d at 1065–66.

Farmers offers no alternative construction for the duty of good faith and fair dealing. Instead, Farmers views the situation as a double-insured in which the insured party was automatically treated as a third-party claimant to be dealt with at arm's length. *See Chavez,* 553 P.2d at 708–09, bad faith claim allowed for unreasonable delay in first-party medical payments; however, the bad faith claim not allowed when alleged misrepresentations concerned third-party claims; *Pixton v. State Farm Mut. Auto. Ins. Co. of Bloomington, Ill.,* 809 P.2d 746 (Utah App.1991), insurance company did not owe insured a duty to deal fairly and in good faith in her capacity as a third-party claimant. However, third-party issues are not in dispute in this case—the Darlows finitely settled those issues in separate litigation. The law has clearly advanced beyond arm's length dealings when considering first-party obligations such as medical payment provisions. To this date, neither party directs this court's attention to any existing Wyoming cases on point.

We believe the Tennessee Rule appropriately states the obligations of the insurer. Under this formulation, the duty of good faith and fair dealing includes informing an insured as to coverage and policy requirements when it is apparent to the insurer that (1) there is a strong likelihood that its insured only can be compensated fully under her own policy and (2) the insured has no basis to believe that they must rely upon their policy for coverage. *Gatlin,* 741 S.W.2d at 326.

Measured against this standard, Farmers' handling of the Darlows' claim, as a matter of law, did not demonstrate knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. The Farmers' claims representative clearly stated at both the October 12 and November 4, 1988 meetings that until a settlement was reached, Mrs. Darlow's medical bills would be paid under the terms of the Darlows' insurance policy. The insured was placed on notice that she could secure payment from her own policy. Such payment would probably have been made earlier than when third-party negligence litigation would have been resolved. The adjuster did not act in a manner calculated to take advantage of the insured's ignorance. *Flint,* 574 S.W.2d at 722.

In sharp contrast to the case precedents upon which the Darlows depend, they knew and understood the terms of their policy,

fulfilling their duty to read. *Security Ins. Co. of Hartford v. Wilson,* 800 F.2d 232 (10th Cir.1986). In making the accident report, Mr. Darlow informed Farmers' agent that his policy was "full coverage" which he understood to include medical payments. Mr. Darlow also reviewed the policy prior to the October 12, 1988 meeting with the Farmers' claims representative. The Darlows contend that Farmers remained obligated to explain the medical payment benefits of the Darlows' policy. The Darlows never requested this explanation. Therefore, there was no occasion to advise the Darlows of their rights under the policy and no violation of any obligation to inform them. *Twaite v. Allstate Ins. Co.,* 216 Cal.App.3d 239, 264 Cal.Rptr. 598 (1989). Nothing is provided as evidence by this record to reveal first to the trial court or now to this court that the Darlows as the insured did not understand the concept of first-party medical payment benefit coverage which they had acquired in their automobile insurance as provided with the full coverage policy. Certainly it is unquestioned that they knew the coverage existed. No violation of the Tennessee Rule was demonstrable by documentation submitted which would justify the trial court's denial of the insurer's motion for summary judgment.

## IV.

### CONCLUSION

No disputed extrinsic facts exist in the present case, so the issue before this court is whether the conduct of Farmers constituted first-party bad faith as defined by Wyoming law. The Darlows have failed to show that Farmers denied or unreasonably delayed payment of their claim. The decision of the district court in granting summary judgment in favor of Farmers is affirmed.