# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 138

OCTOBER TERM, A.D. 2021

December 14, 2021

DIANE BERGANTINO and ANTONY
BERGANTINO,

Appellants
(Plaintiffs),

v.

S-21-0107

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,

Appellee
(Defendant).

*Appeal from the District Court of Albany County*
The Honorable Tori R.A. Kricken, Judge

*Representing Appellants:*
Megan Overmann Goetz and Crystal D. Stewart of Pence and MacMillan LLC, Laramie, Wyoming. Argument by Ms. Goetz.

*Representing Appellee:*
Sean W. Scoggin of Williams, Porter, Day & Neville, P.C., Cheyenne, Wyoming.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]    Antony and Diane Bergantino brought suit against their automobile insurer, State Farm Mutual Automobile Insurance Company (State Farm), for refusing to pay underinsured motor vehicle (UIM) benefits after they were injured in an automobile accident caused by another driver.  The district court granted summary judgment in favor of State Farm, generally finding the Bergantinos were not entitled to UIM benefits under the plain and unambiguous terms of the insurance policy, they had not demonstrated disputed issues of fact to defeat summary judgment on their bad faith claims, and State Farm was entitled to judgment as a matter of law.  We affirm.

## ISSUES

[¶2]    The dispositive issues in this case are:

1.        Did the district court err in ruling the clear and unambiguous language of the insurance policy precluded the Bergantinos' claims for UIM benefits?

2.        Did the Bergantinos properly plead a cause of action that State Farm acted in bad faith in responding to and processing their UIM benefits claims?

## FACTS

[¶3]    On May 7, 2016, Mark Harrington negligently ran a stop sign and collided with Mr. Bergantino's vehicle.  Mr. Bergantino and Ms. Bergantino, who was a passenger in the vehicle, were injured.  Mr. Harrington had liability insurance coverage through USAA Insurance Company (USAA) with limits of $100,000 per person.  Mr. Bergantino's vehicle was insured by State Farm, including $100,000 per person coverage for medical expenses and $100,000 per person coverage for underinsured motor vehicles.

[¶4]    With State Farm's consent, USAA and Mr. Bergantino agreed to settle his claim against Mr. Harrington for policy limits and USAA and Ms. Bergantino agreed to settle her claim for $99,000.  State Farm paid the Bergantinos' medical bills and agreed to waive its rights under the policy to subrogation or reimbursement of the medical payments from the proceeds of their settlements with USAA.

[¶5]    In the meantime, the Bergantinos filed claims with State Farm for UIM benefits, asserting the USAA settlement amounts were insufficient to compensate them for their damages.  State Farm offered Mr. Bergantino $13,370 in UIM benefits but determined Ms. Bergantino "was fairly compensated within the policy limits of the at fault party," so it did not offer her any UIM benefits.  The Bergantinos demanded State Farm pay each of them full UIM benefits of $100,000.  After receiving no satisfactory response from State Farm, they filed suit.

1

[¶6]     In their complaint, the Bergantinos asserted State Farm breached the insurance contract by not paying UIM benefits, acted in bad faith by delaying and denying payment of the benefits, and breached the implied covenant of good faith and fair dealing.  State Farm moved for summary judgment, generally arguing the Bergantinos were not entitled to UIM benefits because Mr. Harrington's vehicle was not "underinsured" as the term was defined in the policy, there were no disputed issues of material fact on their bad faith claims, and State Farm was entitled to judgment as a matter of law.  The Bergantinos contested State Farm's summary judgment motion.  After a hearing, the district court granted summary judgment to State Farm.  The Bergantinos appealed.

## STANDARD OF REVIEW

[¶7]     Wyoming Rule of Civil Procedure (W.R.C.P.) 56(a) authorizes summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  This Court reviews de novo the district court's order granting summary judgment and may affirm a summary judgment on any basis in the record.  *Gowdy v. Cook,* 2020 WY 3, ¶ 21, 455 P.3d 1201, 1206-07 (Wyo. 2020) (citing *Bear Peak Res., LLC v. Peak Powder River Res., LLC,* 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017)); *King v. Cowboy Dodge, Inc.,* 2015 WY 129, ¶ 16, 357 P.3d 755, 759 (Wyo. 2015).

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Sullivan v. Pike & Susan Sullivan Found.,* 2018 WY 19, ¶ 15, 412 P.3d 306, 310 (Wyo. 2018) (quoting *Rogers v. Wright,* 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016)) (other citations omitted).

[¶8]     "'The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment'" using admissible evidence.  *Gowdy,* ¶ 22, 455 P.3d at 1207 (quoting *Hatton v. Energy Elec. Co.,* 2006 WY 151, ¶ 9, 148 P.3d 8, 12 (Wyo. 2006)).  If the movant establishes a prima facie case for summary judgment, the burden shifts to the opposing party to present admissible evidence demonstrating a genuine dispute of material fact for trial.  *Gowdy,* ¶ 23, 455 P.3d at 1207 (citing *Hatton,* ¶ 9, 148 P.3d at

12-13). *See also,* W.R.C.P. 56(c) (requiring evidence supporting and opposing summary judgment to be admissible).

## DISCUSSION

### *Breach of Insurance Policy*

[¶9]    The district court ruled State Farm did not have a contractual obligation to pay the Bergantinos UIM benefits because Mr. Harrington's vehicle was not "underinsured" under the plain language of the policy.

> An insurance policy constitutes a contract between the insurer and the insured. As with other types of contracts, our basic purpose in construing or interpreting an insurance contract is to determine the parties' true intent. We must determine intent, if possible, from the language used in the policy, viewing it in light of what the parties must reasonably have intended. The nature of our inquiry depends upon how clearly the parties have memorialized their intent. Where the contract is clear and unambiguous, our inquiry is limited to the four corners of the document.
>
> We interpret an unambiguous contract in accordance with the ordinary and usual meaning of its terms. The parties to an insurance contract are free to incorporate within the policy whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the policy. It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. Whether a contract is ambiguous is a question for the court to decide as a matter of law.
>
> A contract is ambiguous if indefiniteness of expression or double meaning obscure the parties' intent. Ambiguity cannot be created by the subsequent disagreement between the parties regarding the meaning of a contract. If the meaning of a provision in a contract is not readily apparent, the court may resort to competent evidence of extraneous circumstances to determine the parties' intent. Reviewing courts are free to make a determination as to the existence of ambiguity whether or not the parties agree one way or the other and whether or not the trial court has reached a conclusion one way or the other.

*Cathcart v. State Farm Mut. Auto. Ins. Co.,* 2005 WY 154, ¶ 18, 123 P.3d 579, 587-88 (Wyo. 2005) (quoting *Principal Life Ins. Co. v. Summit Well Serv., Inc.,* 2002 WY 172, ¶¶ 17-19, 57 P.3d 1257, 1262 (Wyo. 2002)). *See also, Aaron v. State Farm Mut. Auto. Ins. Co.,* 2001 WY 112, ¶ 15, 34 P.3d. 929, 933-34 (Wyo. 2001) (outlining the rules for interpreting insurance contracts).

[¶10] The UIM provision of the Bergantinos' insurance policy with State Farm stated:

**Insuring Agreement**

We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle. The bodily injury must be:

1. sustained by an insured; and

2. caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.

We will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the insured's bodily injury have been used up by payment of judgments or settlements, or have been offered to the insured in writing.

(Emphasis omitted).

[¶11] The policy defined an "underinsured motor vehicle" as:

1. The ownership, maintenance, and use of which is either:

a. insured or bonded for bodily injury liability at the time of the accident; or

b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and

2. for which the total limits of insurance and self-insurance for bodily injury liability from all sources:

a. are less than the Underinsured Motor Vehicle Coverage

4

limits of this policy; or

> b. have been reduced by payments to persons other than you and resident relatives to less than the Underinsured Motor Vehicle Coverage limits of this policy.

(Emphasis omitted).

[¶12] Mr. Bergantino's State Farm policy explained the limits of the UIM coverage as:

> **Limits**
>
> 1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage" – Bodily Injury Limits – Each Person, Each Accident[.]"
>
> > a. The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury, is the lesser of:
> >
> > > (1) the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury; or
> > >
> > > (2) the amount of all damages resulting from that bodily injury reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury.
> >
> > b. Subject to a. above, the most we will pay for all damages resulting from bodily injury to two or more insureds injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for bodily injury made to all insureds by or on behalf of any person or organization who is or may be held legally liable for the bodily injury.
>
> **Nonduplication**

1. We will not pay under Underinsured Motor Vehicle Coverage any damages:

    a.     that have already been paid to, or for the insured:

    (1) by or on behalf of any person or organization who is or may be held legally liable for the bodily injury to the insured[.] . . .

    b.     that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

2. We will not pay any amount which would:

    a.     duplicate payment the insured has received or will receive for the same elements of loss; or

    b.     cause the insured to recover more than the damages sustained.

(Emphasis omitted).

[¶13] The UIM language of the policy is clear and unambiguous. An insured is qualified for UIM benefits only when he is entitled to recover compensatory damages for bodily injury from the owner or driver of an underinsured vehicle. A tortfeasor's vehicle is underinsured when its liability coverage limits are less than the limits of the underinsured provision of the State Farm policy. Here, the two amounts are the same – Mr. Harrington's USAA insurance policy had a liability limit of $100,000 per person and Mr. Bergantino's UIM coverage was limited to $100,000 per person. Because Mr. Harrington's vehicle did not meet the definition of an underinsured vehicle, benefits were not available to the Bergantinos under the UIM provision of the State Farm policy. *See generally, State ex rel. Farmers Ins. Exch. v. Dist. Ct. of Ninth Jud. Dist.,* 844 P.2d 1099, 1102 (Wyo. 1993) ("[S]ince the tort-feasor's policy limits were the same as those in the [insureds'] policy, the [tort-feasor] was not 'underinsured.'").

[¶14] Although the Bergantinos argued to the district court that they were entitled to UIM benefits in addition to the benefits available under Mr. Harrington's USAA policy, they do not continue that position on appeal. Indeed, several provisions of the policy, including the "Limits" and "Nonduplication" sections quoted above, clearly demonstrate the parties' intent to preclude such "stacked" coverage. *See Aaron,* ¶ 5 n.1, 34 P.3d at 931 n.1 ("'[S]tacking describes the phenomenon of insureds or claimants against them adding all

available policies together to create a greater pool in order to satisfy their actual loss.'" (quoting 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3D,* § 169:4 (1998))). The Bergantinos instead argue "the [p]olicy is ambiguous, as it appears there would be a minimum of $1,000.00 [Ms.] Bergantino is entitled to under the UIM provision of the [p]olicy based upon the 'up to' language for the $100,000 UIM limits as determined by the District Court." The Bergantinos do not direct us to any "up to" language in the policy or any other ambiguous language. The policy unambiguously provides for UIM benefits only when a vehicle is underinsured, and a vehicle is underinsured if the "total limits" of the tortfeasor's insurance are less than the policy's UIM coverage. As we stated above, the coverages are the same. Furthermore, Ms. Bergantino settled with USAA for less than the limits of Mr. Harrington's liability policy. Under the UIM "Insuring Agreement," State Farm will pay only if "the full amount of all available limits of all bodily injury liability . . . policies . . . that apply to the insured's bodily injury have been used up by payment of judgments or settlements[.]" There is no ambiguity in the policy language which forecloses summary judgment or suggests that Ms. Bergantino was entitled to be paid UIM benefits of $1,000 to bring her total payments up to the $100,000 policy limits. The district court properly granted summary judgment to State Farm on the Bergantinos' breach of contract claim because, under the plain terms of the policy, they were not entitled to UIM benefits in these circumstances.

### Bad Faith

[¶15] "'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 825 (Wyo. 1994) (quoting Restatement (Second) of Contracts § 205 (1981)). *See also, Jontra Holdings Pty Ltd. v. Gas Sensing Tech. Corp.,* 2021 WY 17, ¶ 87, 479 P.3d 1222, 1246 (Wyo. 2021) ("The implied covenant of good faith requires that neither party commit an act that would injure or impair the rights of the other party to receive the benefit of their agreement."). In the insurance context,

> Wyoming has recognized that a breach of the implied covenant of good faith and fair dealing may be actionable in contract for compensatory damages. Wyoming has also acknowledged that a breach of the implied covenant of good faith and fair dealing which rises to the level of an independent tort is actionable for compensatory and punitive damages under proper circumstances. A recovery in tort for the breach of the duty of good faith and fair dealing is premised upon the existence of a special relationship created by the unequal bargaining power that an insurer has over an insured.

*Shrader,* 882 P.2d at 825 (citing *McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855, 860-61 (Wyo. 1990)) (other citations omitted).

[¶16] The Bergantinos maintain there are genuine issues of material fact regarding whether State Farm acted in bad faith when it denied their claims for UIM benefits. To establish an insurer breached the implied covenant of good faith and fair dealing by denying payments, the insured is required to show: "(1) the absence of any reasonable basis for denying a claim for benefits; and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim for benefits." *Shrader,* 882 P.2d at 825 (citing *McCullough,* 789 P.2d at 860, and *Darlow v. Farmers Ins. Exch.,* 822 P.2d 820, 824 (Wyo. 1991)). To satisfy the first factor, the insured must show "'a reasonable insurer under the circumstances would not have acted as it did by denying or delaying payment of the claim.'" *Sonnett v. First Am. Title Ins. Co.*, 2013 WY 106, ¶ 16, 309 P.3d 799, 806 (Wyo. 2013) (quoting *Matlack v. Mountain West Farm Bureau Mut. Ins. Co.,* 2002 WY 60, ¶ 19, 44 P.3d 73, 81 (Wyo. 2002)). "The test used in determining whether a claim was denied in bad faith is an objective one which questions 'whether the validity of the denied claim was not fairly debatable.'" *Id.* (quoting *Matlack*, ¶ 19, 44 P.3d at 81). State Farm obviously had a reasonable basis for denying the Bergantinos' claims because, as we have already ruled, they were not entitled to UIM benefits under the plain terms of the policy. *See generally, Matlack,* ¶ 20, 44 P.3d at 81 (indicating a claim for bad faith based *only* upon a denial of benefits, and not upon other improper conduct, cannot be sustained when the insured is not entitled to benefits under the policy). The district court properly granted summary judgment to State Farm on the Bergantinos' claim that State Farm acted in bad faith by denying them UIM benefits.

[¶17] The Bergantinos also argue there are genuine issues of material fact as to whether State Farm used good faith in responding to and processing their claims for UIM coverage. They assert State Farm acted in bad faith because it ignored their requests for a copy of the policy, delayed in responding to their UIM claims, and led them to believe UIM coverage was available in their case.

[¶18] An insured can maintain a tort claim for violation of the implied covenant of good faith and fair dealing even though the express terms of the insurance contract are honored by the insurer. *Hatch v. State Farm Fire & Cas. Co.,* 842 P.2d 1089, 1099 (Wyo. 1992).

> [A]bsence of a breach of an express term of the policy is not fatal to a bad faith claim where the plaintiff can prove a breach of the implied covenant of good faith and fair dealing. . . .
>
> [A] plaintiff may simultaneously bring an action both for breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing.

8

*Id.* (quoting *Deese v. State Farm Mut. Auto. Ins. Co.,* 838 P.2d 1265, 1270 (Ariz. 1992)). *See also, Cathcart,* ¶ 25, 123 P.3d at 589 ("the insured does not need to prevail on the breach of contract claim to prevail on the claim for breach of the duty of good faith and fair dealing"). Even if the insurer has a "fairly debatable" reason for not paying the claim, it is bad faith to "go beyond a reasonable denial of the claim and engage in unreasonable or unfair behavior to gain an unfair advantage." *Hatch,* 842 P.2d at 1099.

[¶19] Thus, an insurer may be liable for its unreasonable, oppressive, and intimidating claims practices in investigating, handling, or denying a claim, even though the denial was appropriate. *Hatch,* 842 P.2d at 1099. *See also, Shrader,* 882 P.2d at 828 (discussing *Hatch*). In *Sinclair Oil Corp. v. Republic Ins. Co.,* 967 F.Supp. 462, 465 (D. Wyo. 1997), the Wyoming federal district court characterized the type of bad faith recognized in *Hatch* as procedural bad faith. *Id.* (citing *Int'l Surplus Lines Ins. Co. v. Univ. of Wyo. Rsch. Corp.,* 850 F.Supp. 1509, 1526 (D.Wyo. 1994)). *Hatch* includes a list of examples of insurer conduct and tactics which may fall under this theory of bad faith. *Hatch,* 842 P.2d at 1097-98 (quoting Glenn E. Smith, *Understanding the New Tort of First Party Bad Faith in Wyoming: McCullough v. Golden Rule Insurance Company,* XXVI Land & Water L.Rev. 225, 244-68 (1991)) (other citations omitted). As relevant here, an insurer's "failure to respond to an insured's request for clarification of the latter's rights under the policy" or actions "impeding an insured's recovery of an uninsured portion of the loss" may be actionable as bad faith. *Id.* Additionally, the insurer is required to inform the "insured of the scope of coverage provided in a policy." *O'Donnell v. Blue Cross Blue Shield,* 2003 WY 112, ¶ 19, 76 P.3d 308, 315 (Wyo. 2003). *See also, Darlow,* 822 P.2d at 827-28 ("The duty to deal fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies . . . ."). This duty of disclosure may require the insurer "to clearly inform an insured not only what is covered by the policy but what is not." *O'Donnell,* ¶ 19, 76 P.3d at 315. The insurer must also, as part of the duty of good faith and fair dealing, "'inform the insureds of the extent of the coverage afforded them under their policy before negotiating a settlement, especially when it is apparent that the insured does not know the extent of available coverage.'" *Cathcart,* ¶ 56, 123 P.3d at 598-99 (quoting *Shrader,* 882 P.2d at 827).[1]

[¶20] Although an insured may maintain a bad faith claim for an insurer's unreasonable, oppressive, and intimidating conduct in responding to and processing an insurance claim

---

[1] The Bergantinos argue State Farm's offer to pay Mr. Bergantino $13,370 in UIM benefits misled them into believing such benefits were available and is, therefore, evidence of bad faith. In general, offers of settlement are inadmissible to prove liability. W.R.E. 408. However, under certain circumstances, evidence of an offer to settle may be relevant to insurance bad faith claims. *See Shrader,* 882 P.2d at 830-31. We need not delve into the admissibility of State Farm's offer to settle in this case because, as explained below, the Bergantinos did not plead a proper bad faith claim based upon any of State Farm's actions other than denying and/or delaying payment of UIM benefits. *See* W.R.C.P. 56(c) (evidence must be admissible if it is used in support of or against a motion for summary judgment).

regardless of whether the denial of benefits was appropriate, to do so the insured must actually make this claim in the complaint. *See Hatch,* 842 P.2d at 1099 (recognizing a tort action for the improper handling of an insurance claim even when coverage was unavailable or fairly debatable). *See also, Sinclair Oil,* 967 F.Supp. at 465 ("Under *Hatch . . .,* it is clear that an insured may bring an *independent* tort if the manner in which the insurance company investigated, handled or denied the claim violated the duty of good faith and fair dealing." (emphasis added and citations and some quotation marks omitted)). The Bergantinos' three bad faith claims (claims 2 through 4 of the complaint) were rooted in State Farm's failure to pay, or delay in paying, UIM benefits, not in the process it used when handling their UIM benefits claims.

[¶21]  In their first bad faith claim, the Bergantinos contended State Farm committed bad faith when it "denied payment of UIM benefits . . . without a reasonable basis for doing so" and "acted with knowledge of, or in reckless disregard of, the absence of a reasonable basis to deny payment of UIM benefits . . . [because] a reasonable insurer proceeding under the facts and circumstances of an adequate investigation would not have denied payment of the UIM benefits."  The Bergantinos claimed State Farm's conduct in this regard damaged them "in excess of the UIM policy limits" and they were entitled to punitive damages.  The Bergantinos did not, in this cause of action, assert State Farm violated the covenant of good faith and fair dealing by the way it processed their claims for UIM coverage; their cause was limited to State Farm's refusal to pay their claims.

[¶22]  The Bergantinos' second bad faith claim challenged State Farm's "delay of payment of insurance benefits."  They alleged State Farm "delayed and/or denied payments . . . due [to them] under the policy without a reasonable basis for doing so," "caus[ing] [them] damages in excess of the UIM policy limits and in an amount to be proven at trial[.]"  As part of this claim, the Bergantinos alleged that "[i]n delaying and/or denying payment, . . . State Farm not only acted without justification, but acted intentionally and used deceit, nondisclosure, reneging on promises, violation of industry custom, and deliberate attempts to confuse or conceal."  This statement incorporates a necessary element for obtaining a judgment for an insurer's bad faith delay in the payment of insurance benefits.  "[I]n a first-party bad faith case involving a delay of payment as distinguished from a denial of payment, the [insured must prove the insurer] not only acted without justification [, i.e., fairly debatable grounds], but acted intentionally and used deceit, nondisclosure, reneging on promises, violation of industry custom and deliberate attempts to obfuscate." *Farmers Ins. Exch. v. Shirley,* 958 P.2d 1040, 1050 (Wyo. 1998) (citing *Darlow,* 822 P.2d at 826).  Thus, to prove bad faith from a delay in paying benefits, the insured must show the insurer did not have "fairly debatable grounds" for delaying benefits.  Given State Farm was justified in wholly denying benefits, the Bergantinos cannot, as a matter of law, meet the requirements for showing a bad faith delay in payments.  The Bergantinos did not

independently allege that State Farm committed bad faith in responding to or processing their UIM benefits claims other than by failing to timely pay the benefits.[2]

[¶23] The Bergantinos' final bad faith claim against State Farm was generally titled "Breach of the Implied Covenant of Good Faith and Fair Dealing."[3] (Capitalization and emphasis omitted). They asserted "State Farm breached its duty of good faith and fair dealing by refusing to properly compensate [them] pursuant to the insurance agreement" and they "sustained damages in excess of the UIM policy limits and in an amount to be proven at trial." Like their other bad faith claims, the Bergantinos' separate claim for breach of the implied covenant does not pertain to State Farm's actions in responding to or processing their claim independent from its failure to pay UIM benefits and we have already ruled they cannot maintain that bad faith claim because they were not entitled to such benefits.

[¶24] The Bergantinos argue *Michael v. Stock,* 2017 Pa. Super. 99, 162 A.3d. 465 (Pa. Super. Ct. 2017), and *Union Fire Ins. Co. v. Stone,* 41 Ga. App. 49, 152 S.E. 146 (Ga. Ct. App. 1930), support their argument that they stated a proper cause of action for State Farm's bad faith processing of their UIM benefits claims. In *Michael,* the trial court granted summary judgment in favor of a title insurer on an insured's bad faith claim because the insurer had a reasonable basis for denying coverage under the insurance contract. *Michael,* 162 A.2d at 479-80. The Pennsylvania Superior Court reversed on a number of grounds, but relevant to the issue in the present case, it ruled "the trial court misperceived the scope of [the insured's] bad faith claim. [The insured] did not limit her claim to [the insurer's] denial of coverage and refusal to provide [p]olicy benefits, but also complained regarding the claims handling conduct which occurred over a six month period before finally advising [the insured that the insurer] was denying coverage." *Id.* at 480. *Michael* demonstrates a correct pleading of a claim based upon an insurer's bad faith in processing a claim. The insured's bad faith pleading in that case was much broader than the bad faith claims pled by the Bergantinos here.

[¶25] In *Stone,* the Georgia Court of Appeals upheld a judgment against an insurer for failing to pay insurance benefits. *Stone,* 152 S.E. at 148. The judgment included a statutory penalty for "bad faith in refusing to pay the loss sustained." *Stone,* 152 S.E. at 148. The Bergantinos direct us to a ruling in the *Stone* decision that the insurer was estopped from relying on a policy deadline for filing suit to defeat an action by the insured for coverage

---

[2] The Bergantinos argue State Farm unreasonably delayed paying their medical expenses. However, their complaint focuses on the UIM benefits and does not mention any delay in making payments under the "Medical Payments Coverage" provision of the policy.

[3] The Bergantinos seem to distinguish between their bad faith and breach of the implied covenant of good faith and fair dealing claims. In fact, insurance bad faith claims are claims for tortious breach of the policy's implied covenant of good faith and fair dealing. *See, generally, Shrader,* 882 P.2d at 825 ("Liability, in tort, is imposed not for a bad faith breach of contract, but for the failure to comply with the duty of good faith and fair dealing.").

because it refused to "redeliver" the policy to the insured, who was "thereby kept in ignorance of the [deadline] provision." *Id.* at 147. However, the case at bar does not concern estoppel in enforcement of a policy requirement; it addresses the proper pleading of a particular bad faith cause of action. Furthermore, the bad faith claim in *Stone* was based upon the insurer's refusal to provide coverage, not upon its conduct in responding to or processing the insurance claim. *Id.* at 148.

[¶26] The Bergantinos were not entitled to UIM benefits under the policy and their bad faith claims were based upon State Farm's denial or delay in paying such benefits. Under these circumstances, the district court properly granted summary judgment to State Farm on the Bergantinos' bad faith claims.

## CONCLUSION

[¶27] The district court did not err by granting summary judgment to State Farm on the Bergantinos' breach of contract and bad faith claims. Under the unambiguous language of the policy, they were not entitled to UIM benefits, and they did not properly allege that State Farm violated the implied covenant of good faith and fair dealing in ways other than by refusing to pay UIM benefits.

[¶28] Affirmed.