2003 WY 112

**Dixie M. O'DONNELL, Appellant (Plaintiff),**

v.

**BLUE CROSS BLUE SHIELD OF WYOMING, Appellee (Defendant).**

**No. 02–251.**

Supreme Court of Wyoming.

Sept. 9, 2003.

---

Representing Appellant: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Representing Appellee: John B. "Jack" Speight and Amanda Hunkins of Speight, McCue & Assoc., P.C., Cheyenne, Wyoming. Argument by Ms. Hunkins.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Dixie O'Donnell (O'Donnell) appeals a district court decision holding that a waiver she signed excluding a cervical spine condition from coverage under a health insurance policy issued by Blue Cross Blue Shield of Wyoming (Blue Cross) was valid and enforceable. O'Donnell challenges the validity of the waiver in light of endorsements adopted to conform her policy to provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C.A. §§ 300gg through 300gg–91 (2003). O'Donnell also contends that Blue Cross should be estopped from denying coverage because it breached an affirmative duty to inform her of alternative coverage available through the Wyoming Health Insurance Risk Pool, Wyo.

Stat. Ann. §§ 26–43–101 through 26–43–113 (LexisNexis 2003).

[¶ 2]  We affirm.

## ISSUES

[¶ 3]  O'Donnell raises the following issues in her brief:

1.  Whether the definition and treatment of "preexisting condition exclusion," as provided in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (42 U.S.C. § 300gg(b)(1)) includes waivers or other permanent exclusions of health conditions?

2.  Whether the inclusion of HIPAA's definition and treatment of "preexisting condition exclusion" through Appellee's endorsement to Appellant's health insurance policy should be construed so as to supercede her earlier waiver as to coverage of any back condition she suffers?

3.  Whether the HIPAA endorsement to Appellant's health insurance policy created an ambiguity as to the coverage of Appellant's back surgery bills?

4.  When Appellee is the exclusive administrator of the Wyoming Health Insurance Pool ("WHIP") and charged thereby with the duty of publicizing this expanded health insurance coverage to Wyoming residents, did Appellee, as Appellant's health insurer and the WHIP administrator, have a duty to Appellant to inform her that health insurance coverage was available through WHIP for the health condition that Appellee excluded from the existing health insurance coverage it provided to Appellant?

Blue Cross sets out the following statement of the issues:

Was summary judgment properly granted in favor of Blue Cross Blue Shield of Wyoming by the district court upon Appellant's claims of a violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) [42 U.S.C. § 300gg, *et seq.*], namely the provision applying to coverage of preexisting conditions, as well as Appellant's claims of promissory/equitable estop-

pel, reasonable expectations doctrine, fraud and bad faith[?]  In turn, was Appellant's Motion for Partial Summary Judgment properly denied[?]

## FACTS

[¶ 4]  In February 1994, O'Donnell obtained an individual health insurance policy from Blue Cross.  O'Donnell had been treated for a cervical spine injury in 1991.  As a condition of providing insurance to O'Donnell, Blue Cross required her to waive coverage for any treatment related to her cervical spine.  The waiver form provided:

I understand and agree that **Dixie** is not to be covered under my application for Blue Cross and Blue Shield service now or in the future for the treatment of **Cervical Spine and/or secondary complications** or any condition related thereto.

(Emphasis in original.)  O'Donnell signed and returned the waiver to Blue Cross.

[¶ 5]  The cover letter to O'Donnell's policy stated: "There is a twelve (12) month waiting period for any condition considered to be preexisting which is explained in the section entitled, 'What We Will Not Pay For General Limitations and Exclusions.' " That section provided:

[W]e will not pay for any of the following services, supplies, situations, hospitalizations or related expenses:

* * *

PRE–EXISTING CONDITIONS: Any disease or physical condition manifesting itself in such a manner as would cause an ordinarily prudent person to seek medical advice, diagnosis, care or treatment, or for which medical advice, diagnosis, care or treatment was recommended or received during the six (6) months immediately preceding the effective date of coverage, or relating to a pregnancy which existed on the effective date of coverage, will NOT be covered as a benefit under this Agreement for a period of twelve (12) months following the subscriber's effective date of coverage.

The policy definition of "preexisting conditions" paralleled the statement set out in the limitations section.

[¶ 6] In June 1995, Blue Cross issued an endorsement to O'Donnell's policy intended to clarify existing contract language. Included in the endorsement was the addition of a definition for "waiver of coverage:"

A waiver of coverage is a written amendment to the application which permanently eliminates coverage for the particular disease or medical condition set forth in the written waiver signed by the subscriber.

O'Donnell has denied receiving this endorsement.

[¶ 7] Blue Cross amended O'Donnell's policy in June 1997 through another endorsement. The purpose of the endorsement was to ensure that the policy complied with the provisions of HIPAA. The amendment included a modification to the exclusion of preexisting conditions:

Pre-existing Conditions: Any condition, (whether physical or mental), regardless of the cause of the condition, for which medical advice, diagnosis, care or treatment was recommended or received within the six (6) month period immediately preceding the effective date of coverage, will not be covered as a benefit under this Agreement for a period of twelve (12) months following the subscriber's effective date of coverage. A pregnancy existing on the effective date of coverage is considered a pre-existing condition.

In determining whether this pre-existing condition exclusion period applies to an eligible subscriber, Blue Cross Blue Shield of Wyoming will credit the time an eligible subscriber was previously covered by creditable coverage, provided there was not a significant break (90) days) in coverage from the previous credible coverage. Waiting periods applicable under this individual health plan shall not be considered in determining if a significant break in coverage has occurred.

The definition of "preexisting conditions" was also modified to reflect the amendment to the policy. The endorsements incorporated the provisions of HIPAA relating to preexisting condition exclusions located in the Group Market Reforms section of that Act. *See* 42 U.S.C. §§ 300gg(a); 300gg(b)(1)(A) and 300gg(c)(1) & (2).

[¶ 8] In 1999, O'Donnell underwent a cervical disc fusion. O'Donnell submitted bills for her surgery to Blue Cross, which denied payment because the charges were "incurred for a condition that has been excluded from your coverage." O'Donnell subsequently filed suit against Blue Cross. O'Donnell raised three issues: whether the waiver was still valid after the 1997 amendment to her policy; whether Blue Cross had an affirmative duty to inform her of the availability of alternative insurance coverage for excluded medical conditions through the Wyoming Health Risk Insurance Pool (WHIP); and, whether any statements or actions by Blue Cross provided a basis for applying promissory or equitable estoppel to preclude Blue Cross from denying coverage for her 1999 surgery.[1] The parties filed cross-motions for summary judgment. After a hearing, the district court granted Blue Cross' motion. The district court held that the waiver was valid under Wyoming law and not affected by the 1997 amendment to her policy. The court concluded that HIPAA was not applicable to O'Donnell's policy under the circumstances and did not affect the validity of the waiver. The court also found that Blue Cross did not owe a duty to inform O'Donnell of the alternative insurance available from WHIP. O'Donnell has appealed the district court's ruling.

## STANDARD OF REVIEW

[¶ 9] Our standard for reviewing summary judgments is well established:

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when

---

1. The district court ruled that O'Donnell had not established a sufficient factual basis to support her claims of promissory or equitable estoppel. O'Donnell did not address the district court's ruling on this claim in her appellate brief. Generally, an issue not raised or supported with cogent argument in an appellant's brief is considered waived. *Doctors' Company v. Insurance Corporation of America,* 864 P.2d 1018, 1028 (Wyo.1993). Although Blue Cross addressed this issue in its brief, we consider the claim waived and will not address it.

a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all the favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. We do not accord any deference to the district court's decision on issues of law.

*Mathewson v. City of Cheyenne,* 2003 WY 10, ¶ 4, 61 P.3d 1229, ¶ 4 (Wyo.2003) (quoting *Andersen v. Two Dot Ranch, Inc.,* 2002 WY 105, ¶ 10, 49 P.3d 1011, ¶ 10 (Wyo.2002)). This is an appeal from a disposition of cross-motions for summary judgment. When a district court grants one party's motion and denies the other party's motion and the court's decision completely resolves the case, both the grant and the denial of the motions for summary judgment are subject to appeal. *McLean v. Hyland Enterprises, Inc.,* 2001 WY 111, ¶ 17, 34 P.3d 1262, ¶ 17 (Wyo.2001). Our review encompasses the entire case, including the grant and the denial of the cross-motions for summary judgment.

[¶ 10] Resolution of the issues before us in this case also requires the application of our rules for interpreting insurance contracts, which we recently set out in detail:

An insurance policy constitutes a contract between the insurer and the insured. *Evans v. Farmers Insurance Exchange,* 2001 WY 110, ¶ 8, 34 P.3d 284, ¶ 8 (Wyo. 2001); *Helm v. Board of County Commissioners, Teton County, Wyoming,* 989 P.2d 1273, 1275 (Wyo.1999). As with other types of contracts, our basic purpose in construing or interpreting an insurance contract is to determine the parties' true intent. *Polo Ranch Company v. City of Cheyenne,* 969 P.2d 132, 136 (Wyo.1998). We must determine intent, if possible, from the language used in the policy, viewing it in light of what the parties must reasonably have intended. *Sinclair Oil*

*Corporation v. Republic Insurance Company,* 929 P.2d 535, 540 (Wyo.1996). The nature of our inquiry depends upon how clearly the parties have memorialized their intent. *Evans,* 2001 WY 110, ¶ 8, 34 P.3d 284. Where the contract is clear and unambiguous, our inquiry is limited to the four corners of the document. *Id.; Sierra Trading Post, Inc. v. Hinson,* 996 P.2d 1144, 1148 (Wyo.2000).

We interpret an unambiguous contract in accordance with the ordinary and usual meaning of its terms. *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255, 1258 (Wyo.1988). The parties to an insurance contract are free to incorporate within the policy whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the policy. *Hulse v. First American Title Company of Crook County,* 2001 WY 95, ¶ 37, 33 P.3d 122, ¶ 37 (Wyo.2001); *St. Paul Fire and Marine Insurance Co.,* 763 P.2d at 1258. It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. *Evans,* 2001 WY 110, ¶ 9, 34 P.3d 284; *Sinclair Oil Corporation,* 929 P.2d at 539; *Martin v. Farmers Insurance Exchange,* 894 P.2d 618, 620 (Wyo.1995). Whether a contract is ambiguous is a question for the court to decide as a matter of law. *Evans,* 2001 WY 110, ¶ 9, 34 P.3d 284; *Martin,* 894 P.2d at 620.

A contract is ambiguous if indefiniteness of expression or double meaning obscure the parties' intent. *Evans,* 2001 WY 110, ¶ 9, 34 P.3d 284; *Hansen v. Little Bear Inn Company,* 9 P.3d 960, 964 (Wyo.2000). Ambiguity cannot be created by the subsequent disagreement between the parties regarding the meaning of a contract. *Farmers Insurance Exchange v. Dahlheimer,* 3 P.3d 820, 826 (Wyo.2000); *Frost Construction Company v. Lobo, Inc.,* 951 P.2d 390, 394 (Wyo.1998). If the meaning of a provision in a contract is not readily apparent, the court may resort to competent evidence of extraneous circumstances to determine the parties' intent. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994). Reviewing

courts are free to make a determination as to the existence of ambiguity whether or not the parties agree one way or the other and whether or not the trial court has reached a conclusion one way or the other. *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo. 1996); *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, 612 P.2d 463, 465 (Wyo.1980). *Principal Life Insurance Company v. Summit Well Service, Inc.*, 2002 WY 172, ¶¶ 17–19, 57 P.3d 1257, ¶¶ 17–19 (Wyo.2002).

## DISCUSSION

[¶ 11] O'Donnell contends that the 1997 endorsement incorporated the Group Market requirements of HIPAA into her policy. O'Donnell argues that since that section of HIPAA does not permit exclusions that permanently deny coverage of a preexisting health condition, the waiver excluding coverage of her cervical spine condition was no longer effective. She further contends that the continuing validity of the waiver would offend the public policy considerations underlying HIPAA by allowing health insurance companies to eviscerate Congressional intent to restrict denial of coverage for preexisting health conditions. O'Donnell also argues that the endorsement's adoption of HIPAA's Group Market rules, insofar as they relate to coverage of previously excluded health conditions, in conjunction with the failure of Blue Cross to explicitly state that "waivers" would not be affected by the endorsement, rendered the insurance policy in question uncertain and ambiguous with respect to coverage for her cervical spine condition requiring the application of the "reasonable expectations" doctrine and a liberal interpretation of the policy in her favor.

[¶ 12] We begin by attempting to ascertain the parties' intent from the language of the policy. As a condition of coverage, O'Donnell signed the waiver precluding her cervical condition from the scope of the policy:

I understand and agree that *Dixie* is not to be covered under my application for Blue Cross and Blue Shield service now or in the future for the treatment of *Cervical Spine and/or secondary complications* or any condition related thereto.

(Emphasis in original.) The term "waiver" was not defined in the policy until 1995 when Blue Cross issued an endorsement stating it was "a written amendment to the application which permanently eliminates coverage for the particular disease or medical condition set forth in the written waiver signed by the subscriber." Although O'Donnell denied receiving the 1995 endorsement, she does not contest the validity of the waiver at the time she signed it. The concept of "waiver" has an established meaning in Wyoming law and "parties to a contract are presumed to enter into their agreement in light of existing principles of law." *Union Pacific Resources Company v. Texaco, Inc.*, 882 P.2d 212, 222 (Wyo.1994) (citing *Black & Yates, Inc. v. Negros–Philippine Lumber Company*, 32 Wyo. 248, 231 P. 398, 401 (1924)). A waiver is "the intentional relinquishment of a known right that must be manifested in some unequivocal manner." *Jensen v. Fremont Motors Cody, Inc.*, 2002 WY 173, ¶ 16, 58 P.3d 322, 327 (Wyo.2002) (citing *Baldwin v. Dube*, 751 P.2d 388, 392 (Wyo.1988)). The language of the waiver is clear and unambiguous: The parties intended that the policy would not cover any treatment for O'Donnell's cervical spine or any related conditions "now or in the future." While the policy also included a standard clause on the coverage of preexisting conditions, the structure of the policy clearly indicates intent by the parties to treat the cervical spine condition differently from any other preexisting conditions O'Donnell may have had. In other words, the policy considered the preexisting conditions clause applicable to other conditions exclusive of O'Donnell's cervical spine. To conclude that the preexisting conditions clause in the policy had any relation to the cervical spine condition would render the existence of the waiver superfluous in clear contravention of the parties' explicit intent otherwise.

[¶ 13] As the district court noted, since the preexisting conditions clause had no relevance to the waiver, the 1997 endorsement that modified the definition of a preexisting condition had no effect on "the coverage status for treatment of [O'Don-

nell's] cervical spine condition because the waiver precluded any coverage for that condition regardless of whether it was a preexisting condition under the policy." An amendment or modification to an agreement leaves intact those provisions of the original agreement not expressly or impliedly superseded. *Tejani v. Allied Princess Bay Company*, 204 A.D.2d 618, 612 N.Y.S.2d 227, 228–29 (N.Y.A.D. 2 Dept.1994); 17A C.J.S. *Contracts* § 408 (1999). The 1997 endorsement to the policy clearly did not expressly supersede the waiver. Since the waiver was originally intended to operate separately from the preexisting conditions clause, there is no basis for finding an implied repeal of the waiver.

■ [¶ 14] The 1997 endorsement to O'Donnell's policy that amended the definition of a preexisting condition tracks the language found in HIPAA at 42 U.S.C. § 300gg(a). This section of HIPAA applies to group insurance policies. O'Donnell contends that the incorporation of the definitional language for preexisting conditions into her policy indicates an intent by Blue Cross to adopt all of the provisions relating to group policies. From that proposition, she argues that the section of HIPAA in question precludes use of waivers or exclusions to permanently deny coverage of a preexisting health condition and, accordingly, the waiver is no longer valid. O'Donnell's argument fails for several reasons. First, as we have already noted, the preexisting conditions clause of her policy is separate from the waiver and has no effect on it. Thus, the adoption of a new definition for preexisting conditions based on HIPAA is irrelevant to the validity of the waiver.

[¶ 15] Second, O'Donnell's policy is an individual, not a group, policy.[2] The policy was not purchased through an employer or any other group. O'Donnell purchased it on her own initiative. With respect to individual policies, the relevant portion of HIPAA provides:

**(a) Guaranteed availability**

**(1) In general**

Subject to the succeeding subsections of this section and section 300gg–44 of this title, each health insurance issuer that offers health insurance coverage (as defined in section 300gg–91(b)(1) of this title) in the individual market in a State may not, with respect to an eligible individual (as defined in subsection (b) of this section) desiring to enroll in individual health insurance coverage

(A) decline to offer such coverage to, or deny enrollment of, such individual; or

(B) impose any preexisting condition exclusion (as defined in section 300gg(b)(1)(A) of this title) with respect to such coverage.

**(2) Substitution by State of acceptable alternative mechanism**

The requirement of paragraph (1) shall not apply to health insurance coverage offered in the individual market in a State in which the State is implementing an acceptable alternative mechanism under section 300gg–44 of this title.

42 U.S.C. § 300gg–41(a)(1) & (2). HIPAA bans the imposition of any preexisting condition exclusion in an individual health insurance policy unless a state has implemented an acceptable alternative mechanism under the Act. Wyoming has implemented such an alternative mechanism through WHIP at Wyo. Stat Ann. §§ 26–43–101 through 26–43–113. WHIP provides coverage for persons who have been denied coverage for preexisting conditions. § 26–43–103(a)(iii). The implication of this statutory design is that exclusions of preexisting conditions are permissible in Wyoming under HIPAA because of the enactment of "an acceptable

---

**2.** HIPAA differentiates between "individual health coverage" and "group health coverage." Individual health coverage "means health insurance coverage offered to individuals in the individual market." 42 U.S.C. § 300gg–91(b)(5). The "individual market" is defined as "the market for health insurance coverage offered to individuals other than in connection with a group

health plan." 42 U.S.C. § 300gg–91(e)(1)(A). In contrast, group health coverage is defined as insurance obtained in connection with a plan offered by an employer. 42 U.S.C. § 300gg–91(a)(1) & (b)(4). There is no question that O'Donnell obtained her insurance policy as an individual and not through an employer.

alternative mechanism." There is nothing in HIPAA or WHIP that prohibits an insurance provider from utilizing a waiver to accomplish that objective. Indeed, to find otherwise would render the referenced provision of HIPAA meaningless for there would be no reason for a program like WHIP to even exist.

[¶ 16] We have found the language of the waiver and the policy to be unambiguous. Accordingly, O'Donnell's argument for the application of the "reasonable expectations" doctrine, which considers the reasonable expectations of the person applying for the insurance, is unavailing:

> Where insurance contract terms are clear and unambiguous, the "reasonable expectations" of the contracting parties are irrelevant to contract construction issues. A rule of construction that considers the reasonable expectations of the parties is of no assistance where the policy terms are clear and unambiguous. We hold that the contract terms here are clear and unambiguous, and rules of construction such as the doctrine of reasonable expectations are inapplicable.

*Ahrenholtz v. Time Insurance Company*, 968 P.2d 946, 950 (Wyo.1998) (quoting *Pribble v. State Farm Mutual Automobile Insurance Company*, 933 P.2d 1108, 1113–14 (Wyo. 1997)).

[¶ 17] In an alternative argument, O'Donnell contends that Blue Cross owed an affirmative duty to disclose the availability of alternative insurance coverage for her cervical spine condition through WHIP. O'Donnell asserts that there is a special relationship between an insured and an insurer, and that where an insured has inadequate coverage for a particular peril and where the insurer is aware of that circumstance but fails to advise the insured of the lack of coverage or alternative available coverage that could have prevented the loss, then the insurer is liable for any loss. O'Donnell also contends that Blue Cross had a particular duty to advise her about the existence of WHIP arising out of Blue Cross' status as administrator of that program. Since Blue Cross breached this duty by not informing her of the alternative coverage, O'Donnell argues that Blue Cross

should be estopped from denying coverage for her cervical spine surgery under her policy.

[¶ 18] Among cases from other jurisdictions, O'Donnell cites to our decision in *Darlow v. Farmers Insurance Exchange*, 822 P.2d 820 (Wyo.1991). In that case, the insured argued that the insurer violated its duty of good faith and fair dealing by intentionally failing to inform the insured of available policy benefits and misrepresenting the insured's rights under the policy. *Id.*, at 827. We held that:

> [T]he duty of good faith and fair dealing includes informing an insured as to coverage and policy requirements when it is apparent to the insurer that (1) there is a strong likelihood that its insured only can be compensated fully under her own policy and (2) the insured has no basis to believe that they must rely upon their policy for coverage.

822 P.2d at 828 (citing *Gatlin v. Tennessee Farmers Mutual Insurance Company*, 741 S.W.2d 324, 326 (Tenn.1987)). In that case, we concluded that the insurer had not violated its duty because the insured knew and understood the terms of the policy. We also noted that the insured had never requested an explanation of the medical benefits payments under the policy so there was no occasion for the insurer to advise the insured of those rights under the policy and, hence, no violation of any obligation to inform the insured. *Id.*, at 828–29.

[¶ 19] O'Donnell misconstrues the nature of the duty identified in *Darlow* and the cases she cites from other jurisdictions. The duty set forth in those cases and in *Darlow* requires an insurer to inform an insured of the scope of coverage provided in the policy. The duty is specific to the particular policy issued. In certain circumstances, this duty may encompass an affirmative obligation on the part of the insurer when it is aware that certain activities of the insured may result in exposure to risks not covered under the current insurance policies. In its essence, the duty requires an insurer to clearly inform an insured not only what is covered by the policy but what is not. The duty does not include a requirement to inform an insured of

alternative coverage available from the insurer or third parties. The insurer must only inform the insured of the scope of coverage provided in the policy, and it is incumbent upon the insured to act on that information. If an insured knows and understands the terms of the policy, then there can be no violation of the duty. 822 P.2d at 828–29. The cases from other jurisdictions cited by O'Donnell are consistent with this proposition. *See, e.g., Louwagie v. State Farm Fire and Casualty Company,* 397 N.W.2d 567 (Minn.App.1986) (remanded for trial on question of the liability of insurer for selling policy to insured that did not provide coverage for workers' compensation where it was alleged that insurer knew at the time the policy was purchased that insured sought such coverage); *United Farm Bureau Mutual Insurance Company v. Cook,* 463 N.E.2d 522 (Ind.App. 1 Dist.1984) (insurer breached duty to exercise reasonable care by failing to inform insured that insurance policy did not cover project after insured inquired about coverage); *Campbell v. Valley State Agency,* 407 N.W.2d 109 (Minn.App.1987) (remanded for trial on question whether insurer breached duty to inform insured on the adequacy of coverage offered under the policy).

[¶ 20] Like the insured in *Darlow,* O'Donnell knew and understood her policy. There is no question that she was aware that her policy did not cover her cervical spine condition. Within this context, it is irrelevant that Blue Cross is the administrator of WHIP. Since it is unquestioned that O'Donnell knew her condition was not covered, there simply was no violation by Blue Cross of any obligation to inform her. 822 P.2d at 828–29.

## CONCLUSION

[¶ 21] The waiver signed by O'Donnell excluding coverage of her cervical spine condition was not invalidated by the subsequent amendments to her insurance policy. The district court's decision is affirmed.