**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TERRA NOVA INSURANCE, LTD.,

    Plaintiff - Appellant,

v.

FORT BRIDGER HISTORICAL
RENDEZVOUS SITE, CORP. a
Wyoming corporation, TOWN OF
LYMAN, WYOMING a Wyoming
local government,

    Defendants,

and

JOHN YARBROUGH and PAULA
YARBROUGH, individually next
friend of STEFFANI YARBROUGH,
a minor,

    Defendants - Appellees.

No. 04-8041
(D.C. No. 03-CV-136B)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

---

[*]   After receiving briefing in this case, the panel granted the parties'
stipulated motion to waive oral argument. Therefore, this case is submitted for
disposition on the briefs. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(A)(2), (G).
This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

This appeal requires us to decide the scope of a "Full Rodeo Coverage" insurance policy (the "Policy") that the Fort Bridger Historical Rendezvous Site, Corp., a Wyoming non-profit, took out to cover its liability as organizer of the Jim Bridger Half Pint Rodeo. At this community rodeo for children under twelve, Steffani Yarbrough fell while participating in the "mutton busting" event and was severely injured. Steffani's parents initiated a state-court negligence action against Fort Bridger.

Terra Nova Insurance, Ltd., the insurer, brought this federal-court action seeking a declaratory judgment that Terra Nova has no liability for the Yarbroughs' claims under Fort Bridger's Policy. The district court disagreed, holding that the Policy is ambiguous and construing it to provide coverage for up to $500,000 of the Yarbroughs' claims. Terra Nova timely appealed this decision. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM the district court.

## BACKGROUND

Steffani Yarbrough, a minor, participated in Jim Bridger's Half Pint Rodeo in an event called "mutton busting" in the summer of 2000. According to the Yarbroughs, Steffani fell or was thrown forward from the back of the sheep she was riding, and the animal ultimately rolled over the top of Steffani "causing

serious and disabling injuries." The Yarbroughs claim Steffani was not wearing a helmet or any protective clothing at the time and "was not provided any instruction, training, or warning concerning her participation."

The Yarbroughs sued Fort Bridger and the Town of Lyman, which owns and maintains the rodeo grounds, in state court for negligence, negligent infliction of emotional harm, and punitive damages.

Terra Nova, the insurer, filed a complaint for declaratory relief in federal court naming Fort Bridger and the Town of Lyman as defendants and asserting that (1) claims arising out of participation in mutton busting are expressly excluded from liability coverage under the Policy and Terra Nova has no duty to indemnify those claims, (2) Terra Nova has no duty to defend either Fort Bridger or the Town of Lyman, and (3) punitive damages are specifically excluded from the Policy. Fort Bridger counter-claimed for a declaration that the Policy does cover the claims asserted against Fort Bridger in state court and that Terra Nova has the duty to defend and indemnify Fort Bridger up to $500,000. The Yarbroughs sought and received permission to intervene and then also counter-claimed for the coverage Fort Bridger asserted.

The district court concluded that the Policy is "unclear and ambiguous" and, construing the policy in favor of the insureds, determined that "Terra Nova has a duty to defend and indemnify Defendant Fort Bridger in the state court

- 3 -

action." The district court also determined that "the [P]olicy limit was intended and will be applied for the $500,000 per occurrence for bodily injury."[1]

## DISCUSSION

### I. Jurisdiction and Standard of Review

The district court properly exercised jurisdiction over this action based on diversity of citizenship. See 28 U.S.C. § 1332. Terra Nova is "a Great Britain insurance company with its principal place of business in London, England." Defendants are all from Wyoming. The amount in controversy, measured by "the maximum limit of the insurer's liability under the policy," is $500,000. State Farm Mut. Auto. Ins. Co. v. Narvaez, 149 F.3d 1269, 1271 (10th Cir. 1998).

The district court entered final judgment on March 31, 2004. Terra Nova filed a timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

Before the district court, the parties filed cross-motions for summary judgment, with both sides agreeing that summary judgment is the proper mechanism for resolving this case. "We review the grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321,

---

[1]The district court also held that punitive damages are not covered under the Policy, and that Terra Nova has "no duty to cover or defend the Town of Lyman in the state court action." These issues are not before us on appeal.

1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## II. Wyoming Insurance Law

Because our jurisdiction lies in diversity, the substantive law of Wyoming controls our analysis. See Sapone v. Grand Targhee, Inc., 308 F.3d 1096, 1100 (10th Cir. 2002). In Wyoming, an insurance policy is construed as a contract which courts must interpret "to determine the parties' true intent." O'Donnell v. Blue Cross Blue Shield of Wyo., 76 P.3d 308, 312 (Wyo. 2003). That intent must be determined "if possible, from the language used in the policy, viewing it in light of what the parties must reasonably have intended." Id. This requires an analysis of the whole contract, reading each provision in light of all the other provisions. Bethurem v. Hammett, 736 P.2d 1128, 1136 (Wyo. 1987). If the policy is "clear and ambiguous," our inquiry is limited "to the four corners of the document." O'Donnell, 76 P.3d at 312.

On the other hand, a policy "is ambiguous if indefiniteness of expression or double meaning obscure the parties' intent."[2] Id. at 312. "[A]ny ambiguities or uncertainties in the meaning of the language used in a policy . . . must be strictly construed against the insurer who drafted the contract." Worthington v. State, 598 P.2d 796, 806 (Wyo. 1979). In addition, "the court may resort to competent evidence of extraneous circumstances to determine the parties' intent" when a policy is ambiguous. O'Donnell, 76 P.3d at 312.

Finally, Wyoming courts have suggested they would also apply the doctrine of reasonable expectations to ambiguous policies if given the opportunity. See St. Paul Fire and Marine Ins. Co. v. Albany County Sch. Dist. No. 1, 763 P.2d 1255, 1262-63 (Wyo. 1988); Sinclair Oil Corp. v. Columbia Cas. Co., 682 P.2d 975, 981 (Wyo. 1984). "Under the doctrine, the court will uphold the insured's reasonable expectations as to the scope of coverage, provided that the expectations are objectively reasonable . . . even though painstaking study of the policy provision would have negated those expectations." St. Paul Fire, 763 P.2d at 1262-63 (internal quotations omitted). This is an objective test, based on what "a hypothetical reasonable insured would glean from the wording of the particular policy and kind of insurance at issue, rather than how a particular insured who

_____

[2]Certainly, the mere fact that the parties now dispute the meaning of the Policy cannot create ambiguity. O'Donnell, 76 P.3d at 312. Instead, our initial analysis must focus on the Policy language itself.

happened to buy the policy might understand it." 16 <u>Williston on Contracts</u> § 49:20 (4th ed. 1997).

**III.    Analysis**

After reviewing the Policy Fort Bridger purchased from Terra Nova, we agree with the district court that it is ambiguous as to its coverage of the claims brought by the Yarbroughs.  Given this ambiguity, we strictly construe the Policy against the insurer, look to extrinsic evidence of the parties' actual intents, and consider the reasonable expectations of a reasonable insured in Fort Bridger's position.  Ultimately, we affirm the district court.  The Policy covers the Steffani's bodily injuries up to a Policy limit of $500,000.

**1.    Policy language**

At the outset, we are struck that the district court's description of this particular Policy as essentially a "cobbled together" group of endorsements and exclusions is particularly apt.  This "Full Rodeo Coverage" Policy consists of a declaration page and ten attached "applicable forms."  The declaration page indicates that Terra Nova will provide "Full Rodeo Coverage" for two performances of the Half Pint Rodeo at the Lyman Rodeo Arena with a total combined single limit of $500,000 for each claim or occurrence of bodily injury or property damage.[3]

---

[3]There are also three "special conditions" not relevant here.

One applicable form is a generic 11-page "Commercial General Liability Form," which provides a baseline "Insuring Agreement":

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

The remainder of this Policy consists of a series of short forms that, upon inspection, consist largely of brief endorsements or exclusions. Before this court, the parties emphasize different forms to support their respective positions.

First, Terra Nova points us to Form GWR-020, which Terra Nova asserts unambiguously excludes any coverage for claims brought by any "participants." It reads in pertinent part:

PARTICIPANTS EXCLUSION

> This insurance excludes:
> Bodily injury, sickness or disease including death at any time resulting therefrom, sustained by any person while:
> > (a) Participating in any activities on behalf of the named insured (paid or unpaid).
> > (b) Practicing for or participating in a contest or exhibition sponsored by the insured.

"Participant" is not defined; however, Terra Nova asserts that it certainly includes Steffani, who was "participating" in the mutton busting event.

- 8 -

The Yarbroughs, in turn, point to three other specific forms that they say trump this "Participants Exclusion" and provide coverage for Steffani's injuries. First, Form GWR-004 notes that "coverage provided by this certificate—Stock Contractor's Liability—applies only to Bodily Injury or Property Damage caused by the Named Insured's Owned or Leased Livestock which are furnished for use in the Scheduled Event." Because Steffani was injured by a sheep at this rodeo, the Yarbroughs say this endorsement applies.

Second, the Yarbroughs cite Form GWR-AI, called "ADDITIONAL INSURED ENDORSEMENT," which states that:

> the 'Persons Insured' provision is amended to include any performer . . . but only as respects negligent acts, errors, or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy . . . and further only with respect to Bodily Injury or Property Damage to persons other than any named insured, insured, or additional insured within the meaning of this policy.

Because Steffani is suing Fort Bridger for negligent omissions in state court, the Yarbroughs say this endorsement applies to cover her injuries.

Finally, the Yarbroughs point to Form GWR-001, which reads:

PARTICIPANT LEGAL LIABILITY

> With respect to Rodeo Events, the exclusion of participants does not apply to Bodily Injury to rodeo performers, rodeo officials, or other persons specifically named or added by endorsement with respect to Participants Legal Liability.

When used with respect to the insurance afforded by this endorsement, "Rodeo Officials" means starters, timers, judges, but does not include:

    (a)    The Rodeo Arena Owner.

    (b)    Mangers [*sic*] or association officials unless they are acting as starters, timers, or judges, or

    (c)    The Named Insured.

It is further agreed that Participant Legal Liability is provided under this policy subject to the Release and Waiver of Liability and Indemnity Agreement signed by each and every participant. In the event of a claim this form must be furnished to the Company. The absence of this form will not void coverage, but a Deductible of $25,000 will apply to such loss if the form described is not furnished on demand.

In consideration of the premium charged, it is hereby understood and agreed that the Limit of Liability under this policy for this coverage is as follows:

    <u>$25,000</u>    Bodily Injury Each Occurrence and in the Aggregate.

Neither "rodeo performer" nor "participant legal liability" is defined.

The Yarbroughs read this "Participant Legal Liability" endorsement as an exception to the "Participant Exclusion" relied on by Terra Nova. They say Steffani was a "rodeo performer" who performed in the mutton busting event, and that the plain language of the first sentence of this endorsement provides that "[w]ith respect to Rodeo Events, the exclusion of participants does not apply to Bodily Injury to rodeo performers." The Policy thus, according to the Yarbroughs, covers Steffani's claims.

Terra Nova, however, disputes the Yarbroughs' interpretation of all three of these forms. Terra Nova does not read the Policy as providing any coverage for any claims brought by participants, and instead says these three forms, at most, cover claims against participants. For example, considering this last "Participant Legal Liability" endorsement in particular, Terra Nova says only "participant legal liability" is covered and that the undefined term "participant legal liability" refers only to coverage for the legal liability that participants themselves might incur, as in the hypothetical case of a rodeo performer being sued for causing bodily injuries by falling on and injuring an audience member. In other words, Terra Nova reads a possessive into the term "Participant Legal Liability" so that it means "a participant's legal liability" rather than the legal liability that Fort Bridger might incur for injuries to the listed participants, such as rodeo performers.

Even if we were to accept Terra Nova's limited definition of "participant legal liability," however, the Yarbroughs argue the plain language of the endorsement still applies more broadly and excepts claims of "Bodily Injury to rodeo performers" from the participant exclusion otherwise in place. That is, if this were the definition of "participant legal liability," the Yarbroughs would read the first sentence of Form GWR-001 to except both "Bodily Injury to rodeo performers" and "Bodily Injury to . . . other persons specifically named or added

- 11 -

by endorsement with respect to Participants Legal Liability" from the participant exclusion. Therefore, the first paragraph could still reasonably be read as a broad exception to the participant exclusion, with the last two paragraphs, starting with the "[i]t is further agreed language," dealing separately with participant legal liability.

Terra Nova, however, would punctuate this first sentence differently. Terra Nova says it excepts only "Bodily Injury to rodeo performers . . . with respect to participant legal liability." Applying Terra Nova's limited definition of participant legal liability, this sentence would then seem to except only another participant's legal liability for bodily injuries to rodeo performers—such as the case of a rodeo performer being sued for falling on and causing bodily injury to another rodeo performer. This makes little sense.[4]

Certainly, we could continue to wrestle with the difficult details of this Policy. However, our review of the Participant Exclusion and the Participant Legal Liability endorsement in particular is sufficient to convince us that the

---

[4]Indeed, although we have assumed it for the purpose of argument, we have doubts about Terra Nova's position that "participant legal liability" means only a participant's own legal liability and not Fort Bridger's. This would seems to read out any need for the requirement of a signed release from every participant in the third paragraph. Before this court, Terra Nova attempts to explain its necessity by stating that "[e]ven though claims by participants are excluded from coverage under Endorsement GWR-20, a non covered [*sic*] claim could still be asserted by a participant." This does not explain at all why a deductible would apply <u>to the Policy's coverage</u> if this release is not signed.

Policy's language is ripe with "indefiniteness of expression" and "double meaning." See O'Donnell, 76 P.2d at 312. The absence of definitions for critical terms and the failure of Terra Nova's agent to make any kind of individualized provisions for Fort Bridger's particular Half Pint Rodeo makes this Policy nearly impossible to reconcile. We see multiple reasonable interpretations of this Policy and, faced with such a conundrum, we must conclude the Policy is ambiguous. Therefore, we look to our additional interpretative tools to decide its coverage.[5]

## 2.    Canons of construction and extrinsic evidence of intent

First, we construe the Policy strictly against Terra Nova. See Worthington, 598 P.2d at 806. The Yarbroughs have posited a reasonable interpretation of the Policy that the Participant Legal Liability endorsement provides a straightforward exception from the Participant Exclusion for claims of "Bodily Injury to rodeo performers," which would include Steffani's injuries. In addition, they have made a reasonable argument that either the "Stock Contracter's Liability"

---

[5]This conclusion is bolstered by the fact that Terra Nova itself concedes the Policy contains language that is "not a model of draftmanship." Indeed, two of Terra Nova's claims handlers interpreted the Policy very differently. The first company notified the Yarbroughs that "the policy provided a $25,000 sublimit for participants, [and] it appears as though the sublimit will be the extent of the proceeds available under the Terra Nova insurance policy." The second claims company, which replaced the first, advised Fort Bridger in a letter approximately one month after the state court action was filed that Terra Nova would provide a defense "under a complete reservation of rights" and that "the applicable limits in this matter are $500,000 combined single limit."

certificate or the "Additional Insured Endorsement" could trump the "Particiants Exclusion."  Any of these interpretations could return rodeo performers' bodily injury claims back within the $500,000 combined limit.[6]

Further, this conforms with the evidence submitted regarding the parties' actual intents.  See O'Donnell, 76 P.3d at 312.  Fort Bridger's president submitted an affidavit that the local agent she purchased the Policy from assured her that it "would cover all aspects of the Half-Pint Rodeo."  This suggests both sides intended the Policy to do just that—cover Fort Bridger for up to the "Bodily Injury" limit of $500,000.  It also conforms with the expectations a reasonable purchaser would have based on the language of the Policy and the type of coverage at issue—that is, "Full Rodeo Coverage" with a policy limit of $500,000 for each claim or occurrence of bodily injury.  See St. Paul Fire, 763 P.2d at 1262.  Certainly, one of the biggest liabilities for which a Half Pint Rodeo organizer would seek insurance would be potential injuries to the children participating.

---

[6]Terra Nova argues that, if there is coverage for Steffani's injuries, it must come from the "Participant Legal Liability" endorsement and therefore be subject, at most, to the $25,000 limit provided at the bottom of that endorsement. However, Terra Nova itself has posited that this refers only to the legal liability incurred by named participants.  In addition, we have already held that the entire endorsement is entirely ambiguous, and that the Yarbroughs might as likely be covered under either of the other specific forms they have named.  Therefore, we are not persuaded that it is "clear and unambiguous" that a $25,000 limit would apply here.

**CONCLUSION**

Therefore, based on the foregoing, we AFFIRM the district court. The Policy does cover the Yarbroughs' state court bodily injury claims. As such, Terra Nova has a duty to defend Fort Bridger in the state court action and to indemnify Fort Bridger up to the policy limit of $500,000.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge