**UNITED STATES COURT OF APPEALS**

**March 4, 2010**

**TENTH CIRCUIT**

SUNCOR ENERGY (U.S.A.) PIPELINE
COMPANY,

         Plaintiff–Counterclaim-
         Defendant–Appellee,

v.

SADDLE RIDGE, LLC,

         Defendant–Counterclaim-
         Plaintiff–Appellant.

No. 08-8085
(D.C. No. 2:07-CV-00169-ABJ)
(D. Wyo.)

## ORDER AND JUDGMENT[*]

Before **LUCERO**, **MURPHY**, and **HOLMES**, Circuit Judges.

This case arises from a contract dispute between Saddle Ridge, a real estate
development company, and Suncor Energy, a corporation that owns an easement over a
parcel of Saddle Ridge's land. After both parties moved for summary judgment,[1] the
district court granted summary judgment in favor of Suncor. Exercising jurisdiction

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

    [1] Suncor originally filed a motion for judgment on the pleadings, but the district
court construed this motion as a motion for summary judgment.

pursuant to 28 U.S.C. § 1291, we affirm.

# I

The parties are familiar with the facts and their agreement, and we refer to only the pertinent provisions as necessary. Saddle Ridge, a Wyoming real estate development company, owns a tract of land in Laramie County, Wyoming, bordered to the west by Whitney Road. Suncor, a Colorado corporation that operates Centennial Pipeline ("pipeline"), has had an easement across a portion of Saddle Ridge's tract since 1990. In 2006, the parties created an amended agreement (the "Agreement"), which granted Suncor easement rights for its pipeline over an expanded parcel (the "Property"). Saddle Ridge's appellate counsel participated in drafting the Agreement.[2] The Agreement expressly states that its purpose is to "modify and amend [Suncor's] easement rights" and "restate [Suncor's] easement rights," but the recitals clause does not modify Suncor's duties. It is clear from our careful reading that the primary purpose of the Agreement is to ensure Suncor's use, enjoyment, protection, and maintenance of its pipeline.

We are asked to decide whether the Agreement authorizes Saddle Ridge to compel Suncor to relocate its pipeline at Suncor's own expense in order to permit regrading of Whitney Road and the Property. This process would involve laying a new pipeline, integrity testing the new pipeline, evacuating crude oil from the existing pipeline, and removing the existing pipeline. Were Suncor not to move its pipeline, Saddle Ridge's

---

[2] At oral argument, counsel responded to a question regarding who had drafted the agreement by stating, "I'm the guilty party for Saddle Ridge."

regrading would put Suncor in violation of federal regulatory requirements.  For the following reasons, we reject a construction requiring Suncor to move the pipeline at Saddle Ridge's command.

## II

"We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party."  Law Co. v. Mohawk Constr. & Supply Co., 577 F.3d 1164, 1168 (10th Cir. 2009).  We grant summary judgment when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[3]  Pursuant to its terms, we construe the Agreement under Wyoming law.  We interpret the Agreement according to the parties' intent, Markstein v. Countryside I, LLC, 77 P.3d 389, 398 (Wyo. 2003), avoiding constructions that render provisions meaningless, Wells Fargo Bank Wyo., N.A. v. Holder, 144 P.3d 401, 409 (Wyo. 2006).

We conclude that the Agreement unequivocally places the decision to move the pipeline in Suncor's hands.  Section 2 states that Suncor has "the right . . . to move the pipeline or pipelines at any time and to any location within the Easement, all in [Suncor's] sole discretion."  The plain, ordinary meaning of this language is that Suncor can decide if, where, and when to move the pipeline.

---

[3] "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."  Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).

Further, Wyoming easement law forbids Saddle Ridge from interfering with the pipeline. See Owsley v. Robinson, 65 P.3d 374 (Wyo. 2003). Yet Saddle Ridge admits that regrading the Property without moving the pipeline would leave it suspended in certain locations. Federal regulations require the pipeline to be buried at least three feet underground. 49 C.F.R. § 195.248. Thus, regrading would violate federal regulations in contravention of the Agreement's mandate that the easement not be used in a manner that violates "any applicable laws, rules or regulations."

Saddle Ridge's contrary arguments are unavailing. It argues that Section 4 of the Agreement requires Suncor to lower the pipeline at its own expense to allow development of the subdivision. But Section 4 states, "In the event the pipeline . . . need[s] to be lowered due to any development of or construction on the Property, [Suncor] shall bear the expense of such lowering." This section merely allocates costs if the pipeline is lowered. Another portion of the Agreement must give Saddle Ridge the right to require Suncor to lower the pipeline. No such provision exists.[4]

Saddle Ridge presents secondary arguments that also fail. It contends that it can force Suncor to move the pipeline because, as fee owner, it retains the right to use the Property "so long as it does not violate the specific limitations of the Easement."

---

[4] Contrary to Saddle Ridge's assertions, our interpretation does not nullify Section 4's cost allocation provision. Section 4 may still be read in conjunction with other contract provisions that dictate the circumstances under which the parties may lower the pipeline. For example, Section 2 gives Suncor the right to move the pipeline at its sole discretion. Accordingly, if Suncor moves the pipeline, it must bear the cost of doing so.

Similarly, Saddle Ridge contends that Section 5 allows it "to construct and maintain access roads for ingress and egress to the subdivision."[5] However, these rights remain bound by the rest of the Agreement. Allowing Saddle Ridge to force Suncor to lower the pipeline would violate provisions that put the decision to move the pipeline in Suncor's "sole discretion" and forbid interference with Suncor's use and enjoyment of its easement.

Third, Saddle Ridge asserts that the "construction and maintenance of access roads across the Property are 'engineering works, or other improvements' and the right to construct and maintain the roads was expressly reserved to Saddle Ridge." It also argues Suncor could not reasonably withhold its approval for the regrading because, before the execution of the Agreement, Suncor was given proposed development plans showing an additional right-of-way connecting to Whitney Road. We presume Saddle Ridge contends that its proposed regrading falls into the Greenbelt exception to Section 3's prohibition on construction. The Greenbelt exception allows Saddle Ridge to engage in specified forms of construction on the Property, provided the construction is reflected in a Greenbelt plan approved in writing by Suncor with Suncor's approval not unreasonably withheld. However, the Greenbelt exception allows Saddle Ridge to avoid the construction ban only in specified ways. These exceptions do not encompass regrading.

---

[5] We presume Saddle Ridge means to argue that it plans to regrade Whitney Road and the Property in order to construct ingress and egress roads: because Whitney Road runs parallel to Saddle Ridge's property, it cannot be an ingress or egress road.

Saddle Ridge's final textual arguments are that the access roads across the Property are public roads, not easements, and that the Agreement does not restrict Saddle Ridge's ability to grant easements for storm drains. Saddle Ridge does not explain how these assertions support its construction. They therefore fail.

Saddle Ridge next asserts that the district court erred by not incorporating extrinsic evidence into the Agreement. First, it claims that the context in which the Agreement was drafted "does not indicate any intention on the part of [the parties] to alter the obligation of Suncor to lower the petroleum pipeline at its expense upon development of the property." However, the plain language of the Agreement creates no such obligation, and the recitals clause expressly imposes no new obligations on Suncor. Second, Saddle Ridge contends the district court should have incorporated the local planning designation of Whitney Road as a minor arterial road and the associated federal regulatory requirements into the Agreement.[6] Wyoming cases holding that contracts incorporate existing law refer either to background principles of law used to interpret contract terms, see, e.g., O'Connell v. Blue Cross Blue Shield of Wyo., 76 P.3d 308, 313 (Wyo. 2003), or to existing laws that affect the validity, construction, and enforcement of contracts, see, e.g., Meuse-Rhine-Ijssel Cattle Breeders of Can. Ltd. v. Y-Tex Corp., 590 P.2d 1306, 1309 (Wyo. 1979). Whitney Road's minor arterial classification does not affect the

---

[6] To meet federal regulatory requirements for minor arterials, Whitney Road would need to be regraded.

validity, construction, or enforcement of the Agreement: Suncor does not own or have an easement over Whitney Road. Thus, we should not incorporate the classification into the Agreement.

Lastly, Saddle Ridge argues the district court did not give it the benefit of every factual inference because the court concluded the pipeline could not be lowered safely. Because the court did not state that the pipeline could not be moved safely, we cannot afford relief on this point.[7]

## III

For the foregoing reasons, we **AFFIRM** the decision of the district court. We **DENY** Saddle Ridge's motion for attorneys' fees and costs, **AWARD** attorneys' fees and costs in favor of Suncor pursuant to the Agreement, and **REMAND** to the district court to

---

[7] Saddle Ridge takes issue with the district court's conclusion that the regrading would interfere with Suncor's use and enjoyment of the pipeline by "leaving portions of the pipeline either exposed or raised above grade." According to Saddle Ridge, this conclusion is an "unsupported negative inference" because no portions of the pipeline will be left exposed if Suncor moved the pipeline. Because Suncor is not obligated to move or lower the pipeline as a matter of law, this assertion is of no moment.

determine the appropriate amount.[8]

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

---

[8] Saddle Ridge argues that awarding fees to Suncor would "encourage the unauthorized practice of the substantive law of Wyoming" because Suncor's appellate counsel, Stephen Masciocchi, has not been admitted to practice law in that state. On this appeal, however, the relevant question is whether counsel has been admitted to the Tenth Circuit bar. According to our records, he has, and Saddle Ridge presents no evidence to the contrary.